[No. 32164.   *En Banc.*   May 26, 1953.]

GLENN BOS, *a Minor, by Jake Bos, his Guardian ad Litem, Respondent,* v. MAURICE J. DUFAULT *et al., Appellants.*[1]

[1]Reported in 257 P. (2d) 775.

*Gavin, Robinson & Kendrick* and *Rode, Cook, Watkins & Orth,* for appellants.

*Olson & Palmer* and *John Wm. McArdle,* for respondent.

HILL, J.—This case relates to a collision at an intersection. The jury rendered a verdict against the favored driver and a judgment was entered thereon. This appeal followed.

The appellants do not seek a new trial; they urge that the trial court erred in not sustaining their various challenges to the sufficiency of the evidence. They urge that we should hold, as a matter of law, (1) that no negligence on the part of the favored driver contributed to the collision, and (2) that the negligence of the disfavored driver should be imputed to the respondent.

The locale of the collision was the intersection of two graveled, nonarterial roads in Yakima county between Wapato and White Swan—Stephenson, which runs north and south, and Progressive, which runs east and west. The time was between ten and eleven o'clock on a Sunday morning in July. (To say that it was bright, sunny, and dusty would be redundant.) The vehicles involved were a motor scooter which, prior to the collision, was traveling east on Progressive road, and an automobile driven by Maurice Dufault which was proceeding north on Stephenson road.

So far as the applicability of the intersection right-of-way rule, as stated in RCW 46.60.150 [*cf.* Rem. Rev. Stat., Vol. 7A, § 6360-88] is concerned, it is immaterial whether the motor scooter was continuing in its easterly course in the intersection or was turning or had turned left and was traveling north out of the intersection when it was hit by the Dufault car, as the jury was instructed that, when two vehicles are simultaneously approaching a given point within an intersection, the vehicle on the right has the right of way. The jury was further instructed that, if the train of cir-

cumstances from which a collision resulted had its origin in the situation of the drivers as they entered the intersection, the case would fall within the rules governing rights of way at intersections. This is in line with our decisions in *Hook v. Kirby,* 175 Wash. 352, 27 P. (2d) 567 (1933); *Rutger v. Walken,* 19 Wn. (2d) 681, 143 P. (2d) 866 (1943); and *Milne v. Seattle,* 20 Wn. (2d) 30, 145 P. (2d) 888 (1944).

That the Dufault car did hit the motor scooter, and that Glenn Bos, then fifteen years of age, a passenger thereon, was seriously injured, is not disputed.

We will first discuss the second of the propositions referred to in the second paragraph hereof, because the facts applicable there are antecedent to the collision.

Some two or three weeks earlier, Glenn's father, Jake Bos, had purchased the motor scooter. There was evidence that Glenn's parents had said that the scooter was bought for Glenn and that it was his. This they denied. The jury was entitled to believe that the scooter had been bought by Mr. Bos for use on his ranches, and that, while Glenn did drive it on the ranch, he did not drive it on the highway except immediately in front of his home or to travel a short distance to a neighbor's.

Richard Ransier, who was nineteen years old at the time and had a driver's license, lived only a short distance away. He worked for Mr. Bos on the farm during the summer and was "like one of the family." He had standing permission from both Mr. and Mrs. Bos to use the motor scooter at any time. On the morning of the collision, Ransier bicycled to the Bos home, accompanied by his four-year-old cousin. Mr. Bos had driven into town. Mrs. Bos was busy and was not paying much attention to the boys and did not know where they were going when they started out on the scooter, although she saw them leave. Every Sunday, some member of the Bos family went to a store a few miles away to get the Sunday newspaper, and the boys had decided to attend to that chore. They started out with Ransier driving, Glenn riding behind, and the four-year-old between them. They had gone about a quarter of a mile when the collision occurred.

The negligence of Ransier, the disfavored driver, is assumed for the purposes of this opinion.

Whether the motor scooter belonged to Glenn was an issue of fact presented to the jury and determined adversely to the appellants.

It is clear that there was no master-servant relationship between Glenn and Ransier such as existed in the case of *Hemrich v. Koch,* 177 Wash. 272, 31 P. (2d) 529 (1934), on which appellants place considerable reliance.

Even in family relationship cases, we have made clear that the negligence of one member of a family will not be imputed to another, except on the theory that they were engaged in a joint adventure. *Paulson v. McMillan,* 8 Wn. (2d) 295, 111 P. (2d) 983 (1941). When the family car doctrine is applied, the result is not reached by imputing to the parents the negligence of the son, daughter, or other member of the family. *Paulson v. McMillan, supra.*

Appellants do not discuss the four elements of a joint adventure as we have stated them in *Carboneau v. Peterson,* 1 Wn. (2d) 347, 95 P. (2d) 1043 (1939); *Poutre v. Saunders,* 19 Wn. (2d) 561, 143 P. (2d) 554 (1943). See, also, article in 24 Wash. L. Rev. 101. Evidence of the *sine qua non* of the relationship of joint adventure, *i.e.,* a contract (*Paulson v. McMillan, supra*), is completely lacking. Nor do we find any satisfactory evidence of the fourth requirement of the relationship, *i.e.,* equal right to a voice accompanied by an equal right to control. See *Lampe v. Tyrell,* 200 Wash. 589, 94 P. (2d) 193 (1939). We cannot assume, as the appellants invite us to do, that Ransier, the only one on the motor scooter who could lawfully operate that vehicle on the highway and who had, as both he and Mr. Bos testified, standing permission to use the scooter, would obey Glenn Bos and defer to his directions in the operation of the motor scooter merely because Glenn's parents owned it.

It was certainly possible to conclude that all that existed here was a mere agreement, a concurrence of minds, to accompany each other upon an excursion. *Paulson v. McMillan, supra; Carboneau v. Peterson, supra.* The negligence

of Ransier could not, under such circumstances, be imputed to Glenn Bos as a matter of law.

We turn now to a consideration of whether there was evidence to take the case to the jury on the issue of Dufault's negligence.

All of the boys were rendered unconscious by the collision, and neither of those called as witnesses remembered any details concerning the collision, except that Ransier testified that he customarily turned north at that particular intersection. Dufault testified that the motor scooter was only ten feet away when he first saw it, and that it attempted to pass in front of him; that he struck it broadside; and that the collision occurred within the intersection. There was evidence from which it could be found that the scooter had made a left turn and was headed north and was struck from behind as it was leaving or after it had passed out of the intersection. As heretofore pointed out, the case was tried on the theory that the rule governing rights of way at intersections was applicable.

The trial court instructed the jury that the primary duty of avoiding collisions at intersections rests with the disfavored driver; that Dufault, as the favored driver, had the right to indulge in the assumption that the driver on his left would yield the right of way to him until he knew or, in the exercise of reasonable care, should have known to the contrary. The jury was further instructed that all rights of way are relative; that the right of way given by the statute to the vehicle on the right at an intersection is not an absolute right of way but a relative one; and that, notwithstanding such right of way, the favored driver had the duty of exercising reasonable care to avoid a collision at an intersection.

Appellants assign no error as to these instructions. Their position is that, assuming the instructions correctly stated the law, there was no evidence of any negligence on the part of Dufault that was a proximate cause of the collision.

The jury might well have concluded that the motor scooter was in the intersection and was making or had made a left turn in front of Dufault, and that Dufault should have

realized, while he could still have avoided hitting the scooter, that its driver was not going to yield the right of way to him.

Appellants rely upon our recent decision in *Massengale v. Svangren,* 41 Wn. (2d) 758, 252 P. (2d) 317 (1953), as an authority to support the proposition that, by the time Dufault knew or should have known that the motor scooter was not going to yield the right of way, he could not avoid the accident.

In *Massengale v. Svangren, supra,* we specifically distinguished cases of the category in which the present one falls, *i.e.,* those in which the favored driver failed to act promptly after observing or negligently failing to observe the disfavored driver crossing or attempting to cross the intersection immediately ahead of him, and in which it has been held that such failure to act promptly constituted negligence on the part of the favored driver and was a proximate cause of the collision. *Young v. Smith,* 166 Wash. 411, 7 P. (2d) 1 (1932); *Finical v. McDonald,* 185 Wash. 121, 52 P. (2d) 1250 (1936); *Justice v. Lavagetto,* 9 Wn. (2d) 77, 113 P. (2d) 1025 (1941); *Bennett v. Karnowsky,* 24 Wn. (2d) 487, 166 P. (2d) 192 (1946). See, also, *Geitzenauer v. Johnson,* 161 Wash. 444, 297 Pac. 174 (1931); *Stokoe v. Paulson,* 168 Wash. 1, 10 P. (2d) 247 (1932); *Chess v. Reynolds,* 189 Wash. 547, 66 P. (2d) 297 (1937); *Whisler v. Weiss,* 26 Wn. (2d) 446, 174 P. (2d) 766 (1946).

The negligence of Dufault and whether it was a proximate cause of the collision were questions for the jury. The judgment is affirmed.

GRADY, C. J., SCHWELLENBACH, HAMLEY, FINLEY, WEAVER, and OLSON, JJ., concur.

MALLERY, J. (dissenting)—The facts in this case are indistinguishable from those in *Massengale v. Svangren,* 41 Wn. (2d) 758, 252 P. (2d) 317, wherein the party having the right of way was permitted to recover. In that case, six members of this court adhered to the principle that the party having the right of way was not negligent, and had

breached a duty of care to neither the disfavored driver nor himself. The other three members of the court said:

"Appellant, being the favored driver, *owed no duty to to respondent, the disfavored driver on his left,* to protect her from her negligence, there being no question of last clear chance in this case. However, he did owe a duty to himself to protect himself from the negligence of the disfavored driver." (p. 762) (Italics mine.)

Thus, all nine members of the court agreed that a favored driver owes no duty of care to the disfavored driver under the terms of RCW 46.60.150 [*cf.* Rem. Rev. Stat., Vol. 7A, § 6360-88], which reads:

"Every operator of a vehicle on approaching public highway intersections shall look out for and give right of way to vehicles on his right, simultaneously approaching a given point within the intersection, and whether his vehicle first reaches and enters the intersection or not: *Provided,* That this section shall not apply to operators on arterial highways."

The legislature passed the foregoing statute in furtherance of its police power for the benefit of the appellants and all persons similarly situated.

Not being able to harmonize the rule of the majority opinion with either the *Massengale* case, *supra,* or the statute, I fear it overrules the former *sub silentio,* and judicially repeals the latter.

I dissent.

DONWORTH, J. (dissenting in part)—I agree with the majority in holding that the negligence of Ransier could not be imputed to respondent as a matter of law.

For the reasons stated in Judge Mallery's dissenting opinion and in my dissenting opinion in *Sebastian v. Rayment, ante* p. 108, 254 P. (2d) 456, I dissent from the remainder of the majority opinion in this case.

Until we enforce the rules of the road as written by the legislature without judicial amendment, there can be nothing but confusion as to the law applicable to accidents occurring in or near intersections.