[No. 10322. Department One. July 15, 1912.]

W. H. WELLS, *Respondent*, v. D. A. DUFFY, *Appellant*.[1]

BILLS AND NOTES—HOLDER IN DUE COURSE—BURDEN OF PROOF—EVIDENCE—SUFFICIENCY. In an action on a promissory note, the plaintiff has sustained the burden of proving that he is a holder in due course, as required by Rem. & Bal. Code, § 3450, where it appears that the note for $2,000 was given in payment of stock and was within a few days sold and indorsed to a corporation in payment of a stock subscription, and in a few weeks sold and indorsed by the corporation for $1,900 paid in cash, neither indorsee having any notice of fraud, and that the maker himself did not learn for two months that he had been defrauded; since (1) plaintiff purchased in good faith, within Rem. & Bal. Code, § 3447, and (2) derived his title through a holder in due course, within Rem. & Bal. Code, § 3449.

SAME—HOLDER IN DUE COURSE—NOTICE OF DEFECTS—EVIDENCE—SUFFICIENCY. The fact that a note for $2,000 was discounted $100, and that the purchaser relied entirely on the credit of the indorser, does not impart notice of a defect in title so as to render him not a holder in due course, where it was represented that both the maker and another indorser were men of financial responsibility.

SAME—EVIDENCE AS TO GOOD FAITH—ADMISSIBILITY. In an action on a promissory note, upon an issue as to whether plaintiff was a

[1]Reported in 124 Pac. 907.

holder in due course, what the maker would have said if asked whether he had a defense to the note, is immaterial, where there was nothing to put the plaintiff upon inquiry.

Appeal from a judgment of the superior court for King county, Myers, J., entered December 9, 1911, upon findings in favor of the plaintiff, in an action on a promissory note, upon a trial to the court. Affirmed.

*Ballinger, Battle, Hulbert & Shorts*, for appellant.

*Douglas, Lane & Douglas*, for respondent.

GOSE, J.—This is a suit by an indorsee upon a promissory note. The defense interposed is that the note was obtained by means of fraudulent representations made by the payee. There was a judgment for the plaintiff. The defendant prosecutes the appeal.

The note was drawn July 5, 1910, for $2,000, in favor of one Blake, payable one year after date. The court found that, within a week after its execution, the payee sold and indorsed it to the American Mortgage & Guaranty Company, a corporation, in payment of a subscription which he had made to the capital stock of that corporation; that on July 28, following, the corporation sold and indorsed it to the respondent for the sum of $1,900, which he then paid, and that neither indorsee had notice that there was any defense to the note or that any defense was claimed against the note, and that neither thereof had any knowledge of such facts that his action in taking the instrument amounted to bad faith, and that each thereof took it in good faith and became a holder in due course.

The appellant challenges the correctness of these findings, but we think they are abundantly supported by the evidence. The law of the case is controlled by our negotiable instruments act, and by the construction which we have heretofore given it. The applicable provisions of the act are as follows:

"The title of a person who negotiates an instrument is defective within the meaning of this act when he obtained the

instrument . . . by fraud . . . or for an illegal considera-
tion, or when he negotiates it in breach of faith, or under
such circumstances as amount to a fraud." Rem. & Bal.
Code, § 3446.

"To constitute notice of an infirmity in the instrument or
defect in the title of the person negotiating the same, the
person to whom it is negotiated must have had actual knowl-
edge of the infirmity or defect, or knowledge of such facts,
that his action in taking the instrument amounted to bad
faith." Id., § 3447.

"In the hands of any holder other than a holder in due
course, a negotiable instrument is subject to the same de-
fense as if it were non-negotiable. But a holder who derives
his title through a holder in due course, and who is not him-
self a party to any fraud or illegality affecting the instru-
ment, has all the rights of such former holder in respect of
all parties prior to the latter." Id., § 3449.

"Every holder is deemed *prima facie* to be a holder in due
course, but when it is shown that the title of any person who
has negotiated the instrument was defective, the burden is
on the holder to prove that he or some person under whom
he claims acquired the title as holder in due course . . ."
Id., § 3450.

The court made no finding as to whether the transaction
had its origin in fraud. Assuming however, without decid-
ing the question, that the note was obtained by means of
fraudulent representations made by the payee, the respond-
ent is entitled to recover on either of two grounds, (1) he
purchased from a holder in due course, and (2) he is a holder
in due course. Upon the assumption that the title of Blake
was defective under the provisions of Rem. & Bal. Code,
§ 3450, the burden is on the holder to prove that he, or some
person under whom he claims, acquired the title as a holder
in due course. *Ireland v. Scharpenberg,* 54 Wash. 558, 103
Pac. 801; *Cedar Rapids Nat. Bank v. Myhre Brothers,* 57
Wash. 596, 107 Pac. 518; *City Nat. Bank v. Mason,* 58
Wash. 492, 108 Pac. 1071.

The evidence shows that Blake, the payee, sold and in-

dorsed the note to the American Mortgage & Guaranty Company, a corporation, a few days after its execution, in payment of his subscription for stock in that corporation. It was informed that the note represented the balance of the purchase price of one-half the capital stock of another corporation, but it had no notice or knowledge that there was fraud in the transaction. The appellant himself did not at that time know that he had been overreached in the sale of the stock. He alleges in his answer that, long after the delivery of the note and within the past few months, he learned that the assets of the corporation whose stock he had bought were much less than Blake represented. His testimony is that he learned, about sixty days after he made the note, that he had been defrauded. It is familiar law that stock in a corporation may be paid for in money or property taken in good faith at a fair and reasonable valuation. 10 Cyc. 471-2; 1 Cook, Stock & Stockholders (3d ed.), § 18. It is clear from the evidence that the respondent's immediate indorser was a holder in good faith. Rem. & Bal. Code, § 3447; *Scandinavian American Bank v. Johnston*, 63 Wash. 187, 115 Pac. 102; *Scandinavian American Bank v. Appleton*, 63 Wash. 203, 115 Pac. 109.

The evidence shows that the respondent paid $1,900 for the note. It is argued that he is not a holder in good faith in that the discount was sufficient to put him upon inquiry; and in this, that he relied solely upon the credit of his immediate indorser. The discount is not so great as to impart notice of a defect in the title to the note, and the evidence shows that, when he purchased it, it was represented to him that both the maker and first indorser were men of financial responsibility. The record is barren of evidence of either a wilful ignorance or a guilty knowledge upon the part of the respondent or his immediate indorser.

The appellant predicates error upon the ruling of the court in sustaining an objection to a question propounded to him by his counsel; which, in effect, is what he would have

said if he had been asked whether he had a defense to the note or whether he expected to pay it. Aside from the fact that the element of time is absent from the question, it was clearly incompetent. A purchaser of a negotiable instrument is not required to seek the party who puts the paper afloat and ascertain from him the nature of the transaction, in order to avert the imputation of bad faith. To so hold would effectually destroy the passing of negotiable paper. The true criterion is, Has the holder exercised good faith? *Scandinavian American Bank v. Johnston, supra.*

Upon both of the grounds stated, the respondent is entitled to an affirmance of the judgment, and it is so ordered.

PARKER, CROW, and CHADWICK, JJ., concur.