[No. 22472. Department Two. June 16, 1931.]

HAROLD SHIRLEY *et al.*, *Respondents*, v. AMERICAN AUTOMOBILE INSURANCE COMPANY, *Appellant.*[1]

[1]Reported in 300 Pac. 155.

*Schwellenbach, Merrick & Macfarlane,* for appellant.
*J. E. McCoy* for respondents.

FULLERTON, J.—The controversy involved in this action arises out of a collision between two auto-

mobiles on the ocean beach highway in Pacific county. The highway mentioned was established by legislative enactment in 1901 (Laws 1901, p. 225), and is confined to the "shore and beach of the Pacific ocean" between the Columbia river or Cape Disappointment on the south to a place approximately thirty miles distant therefrom on the north. The highway proper is the "area or space lying, abutting or fronting on said ocean and between ordinary high tide and extreme low tide." From a point some few miles north of the beginning point of the highway, it extends almost in a straight line to its northern terminal. The width of the highway suitable for travel varies, of course, with the stage of the tide. At ordinary high tide the way is closed to travel entirely, and it widens as the tide ebbs. The surface of the beach, when not covered by the tide, forms an almost perfect roadway for automobiles.

At the time of the collision in question, the tide was at ebb. At the place of the collision and for a long distance lengthwise therefrom, the width of the way over which an automobile could be safely driven is conceded to be one hundred eighty-seven and one-half feet. One of the automobiles was owned by H. A. Shirley, and was then being driven by his son. Five persons were in the automobile, one of whom was Hazel Regan, riding as a guest of the Shirleys. She afterwards married the son, and is one of the respondents in the present action. The automobile was being driven south on the highway. The other automobile was owned by one Wuorinen, and was driven by one Olsen northerly on the highway. There was no other traffic on the highway which interfered with the drivers of either automobile.

There is a dispute in the evidence as to the side of the center of the highway the automobiles were prior to the collision. The driver of the Shirley automobile

and some of its occupants testify that it was well on what was to them the right side of the center of the way, while the owner and driver of the other automobile testify that they were driving on what was to them the right side of the center of the highway, which, if true, would place the Shirley automobile on its left side of the way. The disinterested witnesses to the collision testified that both automobiles were traveling near the center of the highway, some of them state that it was possibly to the left of the center towards the upland, which would place the Shirley automobile on the wrong side of the center. As the automobiles approached each other, all the witnesses agree that they would have collided head-on had neither changed its course. When near each other, the Shirley automobile was turned to its left, and at practically the same instant the other one was turned to its right, the result being a collision at a point some distance from the left of the center of the way towards the upland.

There is a dispute also in the evidence as to the speed the automobiles were traveling. The evidence, as we read it, very clearly shows that the Wuorinen automobile was driven in excess of forty miles per hour, the maximum speed permitted by the statutes then existing; the estimates being between forty and forty-five miles per hour. The speed of the other automobile was estimated by its occupants as being between thirty and thirty-five miles per hour, and the trial court so found. The testimony of the disinterested witnesses, however, tends toward a different conclusion. One of them who was on the upland opposite the place of collision and had an equal opportunity to observe the speed of both automobiles, testified that the Shirley automobile was traveling the faster of the two. Another, who owned a truck in which he was riding, and which was passed by the Shirley automo-

bile some distance prior to the time it reached the scene of the accident, says that his truck was being driven at thirty miles per hour, and that the Shirley automobile passed his truck on its left and pulled away from him. While he does not give an estimate of its speed, his testimony as to distance traveled would indicate that the speed was much greater than the estimates on which the trial court founded its conclusion. Still another witness, the driver of the truck just mentioned, says that the automobile was traveling at least forty miles an hour when it passed them.

The Wuorinen automobile, for a time before the automobiles reached each other, was driven in a zigzag course, having a spread, as one of the witnesses testified, of between fifteen and twenty feet. How close to the place of the collision this manner of driving continued, the evidence is in dispute. The occupants of the Wuorinen automobile testify that it ceased at least a quarter of a mile before the automobiles reached each other. The occupants of the Shirley automobile do not agree with each other as to when the zigzagging ceased. One of them testified that it continued up to the time the automobiles were turned to avoid a collision, while the testimony of the driver of the automobile indicates that it ceased at least four hundred and fifty feet away. The testimony of the disinterested witnesses does not aid much in the determination of the question, although one of them, who examined the tracks of the Wuorinen automobile, testified that it had not zigzagged for at least fifty feet back of the place it turned to avoid a collision.

Some of the occupants of the Shirley automobile were injured by the collision, the guest, Miss Regan, very severely so. Sometime thereafter they severally instituted actions against Wuorinen, the owner of the automobile, and Olsen, the driver, to recover for

the injuries suffered. Both Wuorinen and Olsen defaulted in the actions, and judgments were entered against them in the sums demanded in the complaints. Executions were issued on the judgments, which were returned unsatisfied.

Prior to the accident, the appellant, American Automobile Insurance Company, issued to Wuorinen a policy of insurance insuring him

" . . . against direct loss or expense arising or resulting from claims upon the assured for damages by reason of the ownership or maintenance of the automobile, . . . if such claims are made on account of bodily injuries or death accidentally suffered or alleged to have been suffered by any person or persons . . . as the result of an accident occurring while this policy is in force."

The policy provided that "all rights hereunder are strictly personal to the assured named in this policy," and contained, among others, the following clauses:

"(3) Upon the occurrence of any loss or accident covered hereunder, and irrespective of whether any injury or damage is apparent at the time, the Assured shall give immediate written notice to the Company at its Home Office in St. Louis, Missouri, or to its authorized agent, with the fullest information obtainable at the time; if a claim is made on account of any such accident, the Assured shall give like notice thereof immediately after such claim is made, with full particulars: if any suit is brought against the Assured to enforce such claim, the Assured shall immediately forward to the Company every summons or other process as soon as the same shall have been served: whenever requested by the Company, the Assured shall aid in effecting settlement, securing information and evidence, the attendance of witnesses and in prosecuting appeals, and at all times render all possible co-operation and assistance: the Assured shall not voluntarily assume any liability or interfere in any negotiation for settlement or in any legal proceeding or incur any expense or settle any claim, except at Assured's own

cost, without the written consent of the Company previously given: the Company reserves the right to settle or defend, as the Company may elect, any such claim or suit brought against the Assured.

"(4) No. action shall lie against the Company to recover for loss or expense under this policy arising or resulting from claims upon the Assured for damages until the amount thereof shall have been fixed and rendered certain, either by final judgment against the Assured after trial of the issue or by agreement between the parties with the written consent of the Company, nor in either event unless brought within two years after the date of such judgment or agreement.

"(5) The bankruptcy or insolvency of the Assured named herein shall not relieve the Company from the payment of such loss or expense hereunder as would have been payable but for such bankruptcy or insolvency, and in case judgment shall be secured against such named Assured by reason of any accident covered by this policy and, because of such bankruptcy or insolvency, execution on said judgment is returned unsatisfied, then an action may be maintained by the judgment creditor against the Company subject to the terms and conditions of this policy for the amount of such judgment not exceeding the limits of this policy."

The assured did not strictly comply with all of the conditions of the policy. While he notified the appellant of the accident immediately after it occurred, he did not forward to it the summons and complaint served upon him in the actions, nor did he otherwise notify it of the pendency of the actions. Nor did the appellant learn from any other source of the pendency of the actions until after the judgments were entered therein.

On the return of the executions unsatisfied, the judgment creditors severally instituted actions against the appellant to recover on the judgments. By consent, the actions were tried together to the court sitting without a jury, and resulted in judgments against the

appellant, substantially in the amounts awarded them in the default actions.

In this court, the appellant's principal contention is that the evidence does not justify the judgment entered by the court.

■ Its first objection under this head is that the assured breached the conditions of the policy by failing to forward to it the processes served upon him at the time of the commencement of the actions, or to notify it otherwise of their pendency, and, because of such breach, forfeited his right to recover on the policy for any loss suffered by the accident which gave rise to the actions; drawing the conclusion therefrom that, since the assured had no right of action on the policy, strangers thereto could have none. The trial court found in the policy what it termed a "public liability clause," and held, if we have correctly gathered its meaning, that there could be a liability on the part of the appellant to strangers injured by the negligence of the assured, even though it would not be liable to reimburse the assured for a loss he might be compelled to suffer because of the injury.

With this conclusion of the trial court we cannot agree. In our opinion, the policy does not contain a public liability clause, nor can strangers maintain an action thereon when the assured cannot. But we think the action in this instance may be sustained on another principle.

■ The breach complained of caused no injury to the appellant. By the notice of the accident given following its occurrence, the appellant had opportunity, and the proofs show that it availed itself of the opportunity, to investigate the cause of the accident and ascertain whether the accident gave rise to a liability against it. Since it had no notice of the pendency of the actions against its assured, the judg-

ments entered in the actions were not binding on it. It still had the right to defend against the liability of the assured for the accident, and the right to question the amount of the recovery against its assured (*Merriman v. Maryland Casualty Co.*, 147 Wash. 579, 266 Pac. 682, 63 A. L. R. 1040), and it was permitted to and did avail itself of the right.

Furthermore, the policy does not in express terms declare that it shall be forfeited for a breach of this particular condition. The clause declaring the policy void is directed against concealment of material facts concerning the subject of the insurance, fraud, attempted fraud, or false swearing by the assured touching matters relating to the insurance, which we cannot conceive covers a failure to notify the company of the pendency of an action. Forfeitures, it must be remembered, are not favored either in law or equity, and will not be enforced unless the right thereto is clear and certain. We cannot conclude, therefore, that the breach urged is fatal to the respondents' causes of action.

The second contention under this head is that negligence on the part of the driver of the Shirley automobile was a contributing cause of the accident. With this contention we are constrained to agree. In fact, we think that the drivers of each of the automobiles were guilty of negligence contributing to the accident. The drivers of the automobiles, although they were driving lengthwise of a highway having a width of one hundred eighty-seven and one-half feet, approached each other head-on, neither making an attempt to get out of the course of the other until an accident was all but inevitable. The driver of the automobile of the assured was exceeding the speed limit, and, we think, contrary to the finding of the trial court, the driver of the other automobile was also doing so.

Again, both were driving along the center of the highway, when it was the duty of each to keep on the side that was to him the right of the center. But the evidence which convicts the driver of the Shirley automobile of negligence is that, when he neared the other automobile, he turned the automobile to the left, when custom, the law of the road, and the statute required him to turn to the right.

The trial court excused him from this breach of duty by finding that he became confused by the actions of the driver of the other automobile, applying the doctrine applicable to one placed in sudden peril by the unanticipated negligent acts of another. But we cannot think this doctrine has application here. There was no sudden peril. The driver of the Shirley automobile saw the other automobile approaching for a long distance away and observed the eccentric manner it was being driven. He had almost a hundred feet of unencumbered highway to his right into which he could have turned with safety. Instead of doing this, he drove straight towards the on-coming automobile, and made no effort to avoid it until it was directly upon him. It was, therefore, by his own voluntary act that he was placed in a perilous position, even conceding that his situation was perilous at any time before he made the wrong turn. As we read the evidence, we think it very clearly shows that, had he turned to the right, or even had he driven straight ahead on his course, the driver of the other automobile would have avoided him. His perilous situation was thus one in which he had voluntarily placed himself, and he will not be permitted to charge to another his misguided attempt to avoid the dangerous situation after placing himself within it.

The conclusion we draw from the evidence requires a reversal of the judgments entered in favor of

the different members of the Shirley family. The negligence of the driver bars any recovery on his part, and bars any recovery in favor of his parents, who were the owners of the automobile, because the driver was their agent and servant. The other member of the Shirley family who was awarded a judgment is barred from a recovery because the excursion of the family during which the accident occurred was the joint enterprise of the family in which all participated, and in which each one must bear the fault and blame of the others.

The judgment in favor of Hazel Regan Shirley must be affirmed. She was riding in the automobile at the time of the accident as the guest of the Shirleys, and is in no way responsible for the negligence of either of the drivers. We have not overlooked the argument of the appellant to the effect that she was engaged in a joint enterprise with the Shirley family. But the evidence, as we construe it, does not justify this conclusion. She took no part in promoting the excursion, had no voice in controlling it, and there is no evidence that it was even planned for her benefit. She was invited to accompany the Shirley family on the trip, and went along as a mere guest of the family.

Nor do we think the evidence justifies the further contention that she was herself guilty of negligence in that she made no protest against the conduct of the driver of the automobile. There was nothing in the conduct of the driver observable to her to call for protest prior to the time he turned the automobile in the wrong direction, and then it was too late for protest. The fact that the automobile may have been in the center of the highway or driven in excess of the speed limit were not such acts as would call for protest on her part, unless she was aware of the conditions, and her own testimony is that she was not.

The judgment in favor of Hazel Regan Shirley is affirmed. As to the other respondents, the judgments in their favor are reversed, with instructions to enter judgments in the actions brought by them in favor of the appellant.

TOLMAN, C. J., MILLARD, BEELER, and BEALS, JJ., concur.