[No. 28566.   Department One.   May 14, 1942.]

CARL C. PENCE *et al.*, *Respondents,* v. E. C. BERRY, *Appellant.*[1]

[1]Reported in 125 P. (2d) 645.

*Post, Russell, Davis & Paine,* for appellant.

*R. E. Lowe* and *Clare E. Turner,* for respondents.

STEINERT, J.—Plaintiffs brought suit to recover damages for injuries sustained by the plaintiff wife while riding in an automobile owned and operated by defendant. At the close of plaintiffs' case, defendant challenged the sufficiency of the evidence and moved for judgment in his favor, but the motion was denied. At the conclusion of all the evidence, defendant renewed his challenge and motion, with the same result. The jury returned a verdict for plaintiffs, and thereafter defendant's motion for judgment notwithstanding the verdict was denied by the court. Judgment was thereupon entered on the verdict, and the defendant has appealed.

The facts which the jury was entitled to find from the evidence are as follows: At the time of the events herein narrated, appellant Berry owned and conducted a restaurant in Spokane. Eugene Kirk, who was employed in the office of a wholesale grocery concern in

the same city, had been a patron and a personal friend of appellant for ten or eleven years, and the two of them had, upon several occasions, attended football games together. Kirk and his wife were also friends and neighbors of the respondents, Mr. and Mrs. Pence, and these two families had likewise attended football games together in former years. On the contrary, appellant had never met Mr. or Mrs. Pence prior to the day of the accident here involved.

Some time before October 19, 1940, the appellant and Eugene Kirk had made tentative arrangements to drive together to Pullman, Washington, and there attend a State College of Washington football game to be played on that day. After agreeing to this, however, Kirk recalled that he had previously made a similar arrangement with respondents. In his embarrassment at having agreed to go with two different parties, Kirk confided his dilemma to appellant, and the latter thereupon suggested that all three of them, and their wives, drive to Pullman together, in his car. Kirk and the appellant also discussed the matter of the expenses of the trip, including the cost of meals, tickets to the game, and oil and gas for the car, and it was estimated that the amount necessary to pay all expenses of the journey would not in any event exceed the sum of ten dollars for each couple. Appellant was concerned about the amount of the probable expense to him because, as he stated on cross-examination, if the trip were to cost too much he could not afford to go, inasmuch as he would have the additional expense of hiring two or three people to take the places of himself and his wife at the restaurant during their absence.

Kirk and appellant finally agreed, a short time before the day of the game, that appellant was to take his car and was to provide a lunch, except for coffee, which was to be supplied by Mrs. Kirk; that Pence and Kirk

should contribute to appellant their proportionate shares of the expense of the lunch and of operating the car; and that Kirk should procure the tickets to the game, for which Berry and Pence would later reimburse him. At this time, however, Pence had not yet been consulted with reference to the proposed plan. Kirk therefore suggested to appellant that he would get in touch with Pence and ascertain whether the arrangement was agreeable with him. Kirk thereafter communicated to Pence the substance of his conversation with appellant, and Pence expressed his approval of the arrangement "providing that the expenses would be prorated." Kirk reported Pence's answer to appellant, and the arrangements proceeded forward on the basis of such an agreement for the sharing of expenses.

On the morning of October 19th appellant and his wife, with their car, called for Mr. and Mrs. Kirk and then drove to the home of the respondents, where Mr. and Mrs. Berry met Mr. and Mrs. Pence for the first time. The party of six then started for Pullman. Appellant did the driving, although it had been agreed that morning that he and Kirk would take turns at the wheel.

Shortly after leaving Spokane, the matter of expenses was discussed among the group, and it was understood that Kirk and Pence would each pay appellant two dollars and fifty cents, or thereabouts, to help defray the expense incurred by him, although settlement was to be deferred until after the game, when it could be better determined whether any additional expenditures would be necessary. Kirk was likewise to be reimbursed for the tickets he had purchased for Pence and Berry.

Pursuant to his arrangements with Kirk, appellant had brought a lunch, including even the coffee which

Mrs. Kirk had agreed to provide but had been unable to prepare. Arriving in Pullman, the party ate a portion of the lunch and then repaired to the stadium to witness the game. At its conclusion, at about 5 p. m., they returned to the parked car and, while waiting for the crowd to disperse, ate the remainder of the lunch. After some discussion, they concluded to drive to Moscow, Idaho, for dinner, instead of returning directly to Spokane. A few miles outside of Pullman, the car skidded off the road and turned over when appellant suddenly applied his brakes, and Mrs. Pence was seriously injured. Two or three days later, Mr. Pence offered to pay appellant two dollars and fifty cents as his share of the expenses incurred by appellant, but the latter declined to accept the money because of the expenses which respondents themselves had incurred in the meantime by reason of the accident.

There is no dispute on this appeal as to the negligence of appellant, who was driving the car at the time, nor as to the amount of damages suffered by respondents. The only question involved here is whether or not respondents' claim comes within the prohibition of Rem. Rev. Stat., Vol. 7A, § 6360-121 [P. C. § 2696-879], commonly known as the automobile guest statute, which provides:

"No person transported by the owner or operator of a motor vehicle as an invited guest or licensee, without payment for such transportation, shall have cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator: . . ."

The question to be here determined may be considered from two points of view: (1) Whether the facts in this case establish, as a matter of law, that respondents were invited guests, or (2) whether the

same facts warrant a finding that the relationship between appellant and respondents was that of joint adventurers. Our conclusions upon both phases of the matter lead to the same result.

■ With reference to the first point suggested, we have in former cases indicated, and we now reiterate, that, if an occupant of an automobile is not a guest of the owner or operator thereof at the time of the accident in which the occupant is injured, the exact nature of his legal status at that time is immaterial, for the statute does not bar recovery by anyone other than "an invited guest or licensee, without payment for such transportation." *Forman v. Shields,* 183 Wash. 333, 48 P. (2d) 599; *Potter v. Juarez,* 189 Wash. 476, 66 P. (2d) 290; *Scholz v. Leuer,* 7 Wn. (2d) 76, 109 P. (2d) 294. See, also, *DeNune v. Tibbitts,* 192 Wash. 279, 73 P. (2d) 521.

■ While the statute does not specifically define the words "guest" and "licensee," it is nevertheless clear, from the inclusion of the modifying phrase "without compensation for such transportation," that only gratuitous carriage was meant to be comprehended within those terms. *Buss v. Wachsmith,* 190 Wash. 673, 70 P. (2d) 417, affirmed on rehearing, 193 Wash. 600, 74 P. (2d) 999; *Scholz v. Leuer, supra.* Accord, *Lassiter v. Shell Oil Co.,* 188 Wash. 371, 62 P. (2d) 1096; *Potter v. Juarez, supra.* Prior, even, to the adoption of the statute, a guest was considered to be one who is a gratuitous passenger. See, *Dahl v. Moore,* 161 Wash. 503, 297 Pac. 218; *TeSelle v. Terpstra,* 180 Wash. 73, 38 P. (2d) 379.

■ In the light of these rules, and upon the facts as the jury was privileged to find them, it cannot rightly be held, as a matter of law, that respondents were mere gratuitous passengers in the automobile driven by appellant. To the contrary, we think that

those facts compel a positive ruling that, whatever respondents' legal status may otherwise have been, it was not that of guests. The statute therefore did not bar recovery by respondents for damages suffered through the negligence of appellant.

The second point above suggested has reference to the relationship of joint adventurers. If the evidence be considered sufficient to support a finding of such relationship, that status on the part of respondents would in itself exempt them from the bar of the statute.

■ In the recent cases of *Lampe v. Tyrell*, 200 Wash. 589, 94 P. (2d) 193, and *Carboneau v. Peterson*, 1 Wn. (2d) 347, 95 P. (2d) 1043, after reviewing at some length our former decisions bearing upon the question of joint venture, we set forth and discussed the various elements comprised in that relationship. In the *Carboneau* case, we said:

"Briefly stated, a joint adventure arises out of, and must have its origin in, a contract, express or implied, in which the parties thereto agree to enter into an undertaking in the performance of which they have a common purpose and in the objects or purposes of which they have a community of interest, and, further, a contract in which each of the parties has an equal right to a voice in the manner of its performance and an equal right of control over the agencies used in the performance. Thus, we note (1) a contract, (2) a common purpose, (3) a community of interest, (4) equal right to a voice, accompanied by an equal right of control."

Following that pronouncement, we analyzed, defined, and illustrated the meaning of each of the constituent elements of a joint venture. That discussion we shall not repeat here. The principles stated in the *Tyrell* and *Carboneau* decisions have been recognized and accepted in the following cases: *Moen v. Zurich Gen-*

*eral Accident & Liability Ins. Co.,* 3 Wn. (2d) 347, 101 P. (2d) 323; *Manos v. James,* 7 Wn. (2d) 695, 110 P. (2d) 887; *Paulson v. McMillan,* 8 Wn. (2d) 295, 111 P. (2d) 983.

Each of the necessary elements above stated is plainly discernible in the situation presented by the evidence in this case. There was a contractual relation between the parties, because appellant agreed to transport the respondents, and the latter in turn agreed and became obligated to share the expenses. There was a common purpose in that the mutual objective was attendance at the football game, and not merely a desire for social companionship upon a day's drive. There was a community of interest in the carrying out of that purpose, for each and all of the parties had a common desire to be subserved in attending and witnessing the game, each received the same benefit therefrom, and all were reciprocally concerned in this particular expedition. There was an equal right to a voice as to the manner of its performance, for it is apparent that the entire arrangement was the result of mutual consideration and approval. For like reasons, each had equal right to direct how, when, and where the automobile was to be used in the execution of the enterprise, although, of course, none had the right to interfere with the one who happened to be driving at the time.

Appellant contends, and would have us hold, that the undertaking was purely a social engagement rather than a business venture, and that it therefore furnishes no basis for characterizing it as a joint venture, as that term is understood in the law. We cannot agree with either his premise or his conclusion. As we have already indicated, the objective which the parties had in mind, and for which they made their plans, was not merely that of social companionship,

but, rather, that of reaching a certain destination for a particular common purpose. While the benefit to be derived from the trip was measureable in terms of mental stimulus and physical enjoyment rather than in terms of dollars and cents, it was nonetheless an objective that could be sought and attained through the medium of a joint venture. Many of the objectives of daily life are founded solely in pleasure, but they may often be attained by resort to this particular legal relationship, although it is more commonly employed in connection with purely business matters. The joint venture, as a useful legal device, is therefore not limited to strictly business transactions, but may also find application in connection with enterprises having the attainment of pleasure as their sole objective, so long as the association of the parties is not motivated merely by a desire for social companionship. This case, in our opinion, presents a fair illustration of the sort of relationship which we have generally held, and now hold, to constitute a joint venture.

The judgment is affirmed.

ROBINSON, C. J., MAIN, BLAKE, and DRIVER, JJ., concur.