[No. 30362.   Department Two.   May 27, 1948.]

FRANCES DRTINA FINN *et al., Appellants,* v. ADOLPH DRTINA,
*Respondent.*[1]

[1]Reported in 194 P. (2d) 347.

*Little, Leader, LeSourd & Palmer,* for appellants.

*Kahin & Carmody,* for respondent.

JEFFERS, J.—On May 20, 1943, Frances Drtina Finn, formerly Frances Drtina, and her husband instituted an action in the superior court for King county against Harold Jevning and Adolph Drtina, to recover damages for personal injuries sustained by her while riding in an automobile owned by Mary Marshall, formerly Mary Drtina, the mother of plaintiff Frances Finn and defendant Adolph Drtina, and being driven, at the time of the accident, by Adolph Drtina.

We shall hereinafter refer to Frances Finn as though she were the only party plaintiff.

The injuries sustained by plaintiff were the result of a collision which occurred November 14, 1940, between the car driven by Adolph Drtina, in which plaintiff was riding, and a car driven by defendant Harold Jevning.

In the original complaint, it was alleged that the driver of each of the cars was negligent in certain particulars, and it was further alleged that plaintiff, being in doubt as to which of the defendants was liable for her injuries, or whether both of them were liable, had joined the defendants, in order that the question of liability for her injuries might be determined.

On April 25, 1946, it was stipulated between counsel for plaintiff and defendant Adolph Drtina that defendant Harold Jevning be dropped from the action, it appearing that Harold Jevning had been killed in action while in service with the United States navy in the southwest Pacific. On May 3, 1946, plaintiff filed an amended complaint, making Adolph Drtina alone the defendant. The allegations of negligence as to defendant Adolph Drtina are the same in the amended complaint as in the original complaint, except that the original complaint did not contain the allegation set out in subd. 7, of paragraph No. 4, of the amended complaint. The acts of negligence as set out in the amended complaint are as follows:

"(1) That said defendant failed to yield the right of way to the automobile of Harold Jevning.

"(2) That said defendant failed to sound his horn or give any signal of his intention to pass the automobile operated by the defendant Jevning.

"(3) That he failed to keep his automobile under control.

"(4) That he failed to keep a proper lookout.

"(5) That he drove at an excessive rate of speed in the circumstances.

"(6) That he failed to drive said automobile in a manner commensurate with the rights of other users of said highway.

"(7) That he failed to apply the brakes of said automobile and stop the same and thereby avoid the accident, when he saw, or in the exercise of reasonable care and caution should have seen, that said collision was imminent and apparent."

Defendant, by his answer, put in issue the material allegations of the amended complaint.

On Saturday, December 7, 1946, counsel for plaintiff served on the attorneys for defendant a notice that, on the trial of the action on December 10, 1946, plaintiff would request the court to read the testimony of Harold Jevning, now deceased, which testimony was taken on February 26, 1942, in the superior court for Whatcom county, in cause No. 26425, entitled "Harold Jevning and Lucille Lee, Plaintiffs, v. Adolph Drtina, Defendant," a copy of which testimony was furnished defendant by Charles Rand, official court reporter, who reported the testimony of Harold Jevning at the trial on February 26, 1942.

The cause came on for hearing before the court and jury on December 10, 1946. Frances Finn and her mother, Mary Marshall, were called, and testified as witnesses for plaintiff. Adolph Drtina and Rowena Cordell, a cousin of plaintiff and defendant, were called, and testified for defendant.

Plaintiffs offered, and the court admitted as plaintiff's exhibit No. 6, the pleadings in the case of Harold Jevning and Lucille Lee v. Adolph Drtina, No. 26425 of the superior court records for Whatcom county, the court, however, expressly stating that, in admitting such pleadings, it was not indicating whether or not it would admit the testimony of Harold Jevning given in that case.

Plaintiff next offered to read into the record the testimony of Harold Jevning given in the cause above mentioned. It was plaintiff's contention that this evidence was admissible because Harold Jevning was dead, and the testimony being offered in the instant case was against Adolph Drtina, who was also the defendant in the Whatcom county court.

It may be stated here that it had been stipulated between counsel for the respective parties in the instant case that exhibit No. 7 was a true and correct transcript of Mr. Jevning's testimony. However, counsel for defendant did not agree or stipulate that such testimony was admissible in this case.

When the above testimony was offered, counsel for defendant in the instant case objected to its introduction, on the ground that the two causes of action pertain to different issues; that they do not pertain to the same parties; and that no proper notice was given by counsel for plaintiff that this particular testimony would be offered in this cause.

There was considerable argument on the part of counsel relative to the admissibility in the instant case of the testimony of Harold Jevning in the Whatcom county case, and thereafter the trial court discussed the question at some length, finally concluding and holding that such testimony was not admissible.

At the close of plaintiff's case, counsel for defendant challenged the sufficiency of plaintiff's evidence, for the reasons and upon the grounds that there was no evidence of negligence on the part of defendant, and that plaintiff was a guest, or licensee, under the guest statute. While the court seemed to have grave doubts as to plaintiff's right to recover in this action, it denied defendant's motion.

Defendant then proceeded to put on his evidence, and thereafter the jury returned a verdict in favor of defendant. Plaintiff filed alternative motions for judgment notwithstanding the verdict and for new trial. On June 7, 1947, the court entered a judgment of dismissal, on the sole ground and for the reason

". . . that plaintiffs' claim for damages as a matter of law comes within the prohibition of Rem. Rev. Stat. Vol.

VII-A, Sec. 6360-121, commonly known as the automobile guest statute which bars the plaintiffs from any recovery in this case."

The judgment also contained the following provision:

"It Is Further Ordered, Adjudged and Decreed that the plaintiffs' motion for a new trial be and the same is hereby granted upon the ground and for the reason that the verdict of the jury is against the weight of the evidence and that substantial justice has not been done between the parties, said new trial not to become effective unless and until the foregoing judgment of dismissal shall first be reversed, vacated or set aside."

Plaintiff has appealed from the judgment entered.

Attached to the proposed statement of facts filed herein is a list of points relied upon by appellant on this appeal. The stated points are the basis of the following assignments of error set out in appellant's brief:

"(1) The court committed error in rejection of plaintiffs' offer to read in evidence plaintiffs' exhibit No. 7, page 9, line 1, to and including page 37, line 21, which is a transcript of the testimony of Harold Jevning produced in evidence on the trial of the case of Harold Jevning and Lucille Lee, plaintiffs, versus Adolph Drtina, defendant, in the superior court of Whatcom county, cause No. 26425.

"(2) The court committed error in holding that such evidence was not admissible unless it was between the same identical parties in a subsequent lawsuit.

"(3) The court committed error in holding the plaintiffs' cause of action came within the prohibition of Rem. Rev. Stat., vol. VII-A, § 6360-121, of the state of Washington, known as the 'Automobile Guest Statute,' barring a suit by a guest against the host except for intentional negligence.

"(4) The court committed error in dismissing said action on the ground that plaintiffs' claim for damages comes within the prohibition of said automobile guest statute.

"(5) The court invaded the province of the jury in holding as a matter of law that plaintiff, Frances Drtina Finn was a guest or licensee of the owner or operator of the Lincoln automobile in which she was riding at the time of her injuries."

Before discussing the assignments of error, we desire to make this general statement. We appreciate what this court

has said relative to our consideration of a motion for new trial granted upon the ground that substantial justice has not been done, but, from our consideration of this record, we are wholly at a loss to understand the basis for the trial court's statement contained in the judgment of dismissal.

As hereinbefore stated, appellant called only two witnesses: Mrs. Marshall, appellant's mother, and appellant. Mrs. Marshall was not in either of the cars which were involved in the accident. She did not see the collision and knew nothing about it, except what she may have learned from others, and did not attempt to testify in regard to the accident.

Appellant did not attempt to testify that her brother was negligent in that he did or failed to do any of the things set out in her amended complaint as a basis for his negligence. She frankly admitted that she did not know whether or not her brother sounded his horn at the time he attempted to pass the Jevning car; that she was not paying any particular attention to how or at what speed he was driving; and that she remembered nothing about the collision.

There was absolutely nothing in the testimony of either Adolph Drtina or Rowena Cordell to indicate that Adolph was negligent. Their testimony shows that Adolph was not driving at an excessive rate of speed; that he sounded his horn before attempting to pass the Jevning car; that the driver of the latter car made an abrupt left turn without giving any signal of his intention so to do; and that while Adolph attempted to turn with the Jevning car, it was impossible for him to do so to such an extent as to avoid hitting the Jevning car.

It is apparent from what we have stated that it was necessary for appellant to attempt to show some facts other than those testified to by her witnesses in this case, in order to show negligence on the part of Adolph Drtina, and it was undoubtedly for this purpose and on that theory that appellant attempted to introduce the testimony of Harold Jevning given in the Whatcom county case.

We shall now discuss assignments of error Nos. 1 and 2 together, as they are so discussed in appellant's brief.

Rem. Rev. Stat., § 1247 [P.P.C. § 43-11], provides:

"The testimony of any witness, deceased, or out of the state, or for any other sufficient cause unable to appear and testify, given in a former action or proceeding, or in a former trial of the same cause or proceeding when reported by a stenographer, or reduced to writing, and certified by the trial judge, upon three days' notice to the opposite party or parties, together with service of a copy of the testimony proposed to be used may be given in evidence in the trial of any civil action or proceeding, where it is *between the same parties* and *relates to the same matter*." (Italics ours.)

It must be admitted that the same parties are not involved in the instant case as were involved in the Whatcom county case, and that being true, it would seem that, under the plain wording of the above statute, the testimony of Harold Jevning given in the Whatcom county case would not be admissible in the instant case. However, appellant contends that there are two separate and distinct methods

" . . . for the introduction of former testimony into evidence in order to prove the truth of the matter asserted therein; first, by following the statutory procedure set out in Rem. Rev. Stat., § 1247 (P.P.C. § 43-11); and, second, by submission under the rules of the common law."

Appellant states in her brief that she has sought the introduction of Jevning's testimony under both methods. She further states in her brief:

"It is appellant's position that the parties proponent of the testimony [of Harold Jevning] should not be required to be *identical* or in *privity* under the statute, where the parties *opponent* are identical and had an opportunity to cross examine fully on the identical issue, such cross-examination having been conducted by the same attorneys representing the defendant; that, whether or not this is a requirement under the statute, the common law pertaining to the admission of former testimony is still in effect in this state, that the common law has not been superseded by the statute, and that under the common law rule, the parties proponent of former testimony need not be the same, where the parties opponent are identical and a full opportunity for cross-examination on the identical issue by the same attorneys was had." (Italics ours.)

Appellant states that there are only three cases from this jurisdiction in point: *Duffy v. Blake,* 91 Wash. 140, 157 Pac. 480, decided in 1916; *Arsnow v. Red Top Cab Co.,* 159 Wash. 137, 292 Pac. 436, decided in 1930; and *In re Dougherty's Estate,* 27 Wn. (2d) 11, 176 P. (2d) 335, decided in 1947. Appellant also states in her brief that the *Arsnow* case and the *Dougherty* case were decided upon testimony submitted under the statute only, and that the *Duffy* case was decided upon testimony submitted under the common-law rules.

We are unable to agree in its entirety with the statement of counsel last above set out relative to the *Duffy* case. In that case the court, after quoting Rem. & Bal. Code, § 1247, which is the same as Rem. Rev. Stat., § 1247, heretofore set out, stated:

"Under this statute the testimony to be available [in the case being tried] must be given in a former trial of the same cause. This testimony [of one Carlin, who testified in the case of *Wells v. Duffy,* 69 Wash. 310, 124 Pac. 907] was not so given. The case of *Wells v. Duffy* was not a former trial of this same case. Neither was it between the same parties, nor upon the same subject matter. Statutory rights of this character cannot be extended beyond the language of the privilege, and if the statute is relied upon it must be plain that it covers the offer. We are, therefore, of the opinion that the testimony was not admissible under the statute."

The opinion continues:

"Respondent argues that if it should be so held, then the testimony was admissible under the common law rule stated in 16 Cyc. 1088, as follows:

" 'Facts may be established by evidence thereof given on a former trial, provided the court is satisfied, (1) that the party against whom the evidence is offered, or his privy, was a party on the former trial; (2) that the issue is substantially the same in the two cases; (3) that the witness who proposes to testify to the former evidence is able to state it with satisfactory correctness; and (4) that a sufficient reason is shown why the original witness is not produced.' "

This court, then, without making any statement as to why, in view of the specific provisions of § 1247, *supra,* the common-law rule should be applicable, proceeded to discuss the

case of *Wells v. Duffy,* 69 Wash. 310, 124 Pac. 907, and to state why the testimony of one Carlin given in the last-cited case was not admissible in the case of *Duffy v. Blake,* then being considered, the reason given, as we understand it, being that requirements Nos. 1 and 2 of the common-law rule, as stated, had not been met.

We do not think, therefore, it can be said that the *Duffy* case was decided upon the common-law rule; in fact, it seems to us that the decision was based upon the statute, for, after discussing the common-law rule, we stated:

"The above general rule is to be read with this distinction: that the ground of privity is property, not personal relation; and where, as here, the relation is sought to be predicated upon what has transpired in a former action, it is essential that there be an absolute identity of interest. Based upon this essential, the rule has become established that the fact that *two parties litigant in two different suits happened to be interested in proving or disproving the same facts creates no privity between them.*" (Italics ours.)

We shall not discuss the case of *Arsnow v. Red Top Cab Co., supra,* other than to say that the court apparently held the provisions of § 1247 applicable, for the opinion states:

"It is also manifest that, as to her second cause of action, the testimony of Mr. Arsnow on the first trial was inadmissible, because, as to that cause of action, this suit *is not waged between the same parties.* While it is true that plaintiff is now prosecuting this litigation as administratrix of the estate of her late husband, and that her first cause of action might well be held to be a continuation of the original suit, her second cause of action never was his, but is hers alone, being based upon the fact of her husband's death. Under no theory, therefore, could Mr. Arsnow's testimony be held admissible in support of plaintiff's second cause of action.

"Under the circumstances disclosed by this record, it must be held that the trial court erred in permitting Mr. Arsnow's testimony to be read to the jury." (Italics ours.)

In *In re Dougherty's Estate, supra,* the court, after quoting Rem. Rev. Stat., § 1247, *supra,* and after referring to and quoting from *Arsnow v. Red Top Cab Co., supra,* and *Duffy v. Blake, supra,* held that the court did not err in admitting

the testimony of Clara Dougherty given in a former trial. The opinion states that the court in the case then under consideration was entitled to the benefit of the former testimony of Clara Dougherty in ascertaining the status of property in issue.

■ After a consideration of the statute and the cited cases, we are of the opinion that, in the instant case, under the plain and unambiguous language of the statute, the offered testimony was not admissible, and that the court did not err in refusing to admit such testimony.

We shall next discuss assignments Nos. 3, 4, and 5, which raise the question of whether or not the court erred in holding that appellant was a guest or licensee, and that, such being her status, she could not recover in this action, there being no evidence that the accident was intentional on the part of Adolph Drtina, the driver of the car.

Rem. Rev. Stat., Vol. 7A, § 6360-121 [P.P.C. § 295-95], provides:

"No person transported by the owner or operator of a motor vehicle as an invited guest or licensee, without payment for such transportation, shall have cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator: *Provided*, That this section shall not relieve any owner or operator of a motor vehicle from liability while the same is being demonstrated to a prospective purchaser."

This question requires some discussion of the evidence. The car in question belonged to Mrs. Drtina, now Mrs. Marshall, the mother of appellant and Adolph Drtina, the driver of the car. The car had been purchased by Dr. Drtina and used by him prior to his death on November 6, 1940, for business and family purposes. Adolph Drtina was the only member of the family, other than his father, who had been permitted to drive the car, or, so far as the record shows, could drive it. At the time of the accident, Mrs. Drtina's family consisted of four children: Adolph, respondent here, who was twenty-two years of age; Mary Frances, now Frances Finn, appellant, twenty-three years

of age; Leo, eighteen years old; and Patricia, thirteen. All of the children were living at home, appellant not being married at that time.

Prior to his death, Dr. Drtina and his wife had planned a trip to Point Roberts, to visit her mother on her seventieth birthday, which would occur on November 15, 1940. There was quite a party of relatives going on the trip. On the morning of the accident, November 14th, all of Mrs. Drtina's family left her home in her car, Adolph driving. They first went to the home of Mrs. Renstrom, a sister of Mrs. Drtina, where some of the members of the Drtina family changed cars. Mrs. Drtina and Patricia changed to the Renstrom car, Leo changed to a car driven by Mrs. Drtina's nephew, George Ellsner, and appellant and her cousin, Rowena Tavender, now Rowena Cordell, rode with Adolph, in the Drtina car. There were four cars in the party, and they left the Renstrom home in Seattle about five-thirty and proceeded north toward the Canadian border, on the Pacific highway.

Appellant did not drive a car, and she stated that on former excursions either her father or Adolph drove the car. She stated that at the time they left the house there was no "particular designation or agreement or plan as to who was to go in whose car." It further appears from her testimony that, while they were all at Mrs. Renstrom's, her mother made the decision in regard to where they would ride, and that the arrangement was agreeable to her. Appellant further stated that either her mother or her brother paid for the gasoline, and that she contributed nothing toward the expenses of the trip; that she went as a matter of pleasure and had no obligation to pay any of the expenses; that the ride was completely free, as far as she was concerned. She further stated that, if she had made up her mind at the last moment not to go, she would have been under no obligation to go. She made no attempt to direct her brother as to how he should go, or to exercise any control over the operation of the car by her brother. On redirect examination, appellant was asked:

"Q. Did you have anything to say as to where Mickey [Adolph] might go that day with you? A. No."

Appellant was living at home at the time of the accident and was supported by her mother.

Appellant's contention is stated in her brief as follows:

"The law seems to be well settled in this state that where a car is being used for family purposes, either business or pleasure, all the parties participating in such business or pleasure are *all joint or co-venturers.*" (Italics ours.)

Appellant, to sustain her contention, cites *Hurley v. Spokane*, 126 Wash. 213, 217 Pac. 1004; *Martin v. Puget Sound Electric R.*, 136 Wash. 663, 241 Pac. 360; *Shirley v. American Automobile Ins. Co.*, 163 Wash. 136, 300 Pac. 155; *Hart v. Hogan*, 173 Wash. 598, 24 P. (2d) 99; *Duvall v. Pioneer Sand & Gravel Co.*, 191 Wash. 417, 71 P. (2d) 567; *Scholz v. Leuer*, 7 Wn. (2d) 76, 109 P. (2d) 294; and *Pence v. Berry*, 13 Wn. (2d) 564, 125 P. (2d) 645.

Appellant states in her reply brief that she relies chiefly on the case of *Hart v. Hogan, supra,* and secondly, on *Shirley v. American Automobile Ins. Co., supra.*

In each of the cases of *Hurley v. Spokane, Martin v. Puget Sound Electric R.,* and *Shirley v. American Automobile Ins. Co., supra,* the action was not brought by one member of a joint enterprise against another member thereof, but was brought by one who, under the facts, was held to be a joint adventurer, against an independent third party. The three cases last referred to, together with many other prior cases, are cited and discussed in the case of *Carboneau v. Peterson,* 1 Wn. (2d) 347, 95 P. (2d) 1043. The opinion states:

"The analysis of the foregoing twenty-seven cases leads to at least one irrefutable conclusion, namely, that the case of *Rosenstrom v. North Bend Stage Line, supra* [154 Wash. 57, 280 Pac. 932], has pronounced, and is, the law in this state with respect to joint adventures wherein the use of automobiles is involved. Although, from what appears in the opinions in some of the cases, it may be difficult to demonstrate that the rule has at all times been consistently applied in its full extent and vigor, there can be no doubt of the prevalence and fixity of the rule itself. Its recurrent citation has made it a rubric upon this branch of the law.

"Briefly stated, a joint adventure arises out of, and must have its origin in, *a contract,* express or implied, in which the parties thereto agree to enter into an undertaking in the

performance of which they have a common purpose and in the objects or purposes of which they have a community of interest, and, further, a contract in which each of the parties has an equal right to a voice in the manner of its performance and an equal right of control over the agencies used in the performance. Thus, we note (1) a contract, (2) a common purpose, (3) a community of interest, (4) equal right to a voice, accompanied by an equal right of control.

"The *sine qua non* of the relationship is a *contract,* whether it be express or implied. As a legal concept, a joint adventure is not a status *created or imposed by law,* but is a relationship voluntarily assumed and arising wholly *ex contractu.* The essence of a contract is that it binds the parties who enter into it and, when made, obligates them to perform it, and failure of any of them to perform constitutes, in law, a breach of contract. A mere agreement, or concord of minds, to accompany one another upon an excursion, but without an intent to enter into mutually binding obligations, is not sufficient to create the relationship of joint adventure." (Italics ours.)

■ Whatever may be said in regard to the cases decided prior to the *Carboneau* case, *supra,* it is now firmly established that the rules announced in the *Carboneau* case are now the rules to be applied in determining whether or not in a given case the relationship of joint adventurer exists.

■ Appellant argues that she should be held to be a joint adventurer with her brother, under the family car doctrine. We have never held that the family relationship alone was a proper basis for holding that one riding in an automobile being driven at the time by another member of the family was a joint adventurer with the operator or owner of the car. This is made apparent from our statement in the case of *Paulson v. McMillan,* 8 Wn. (2d) 295, 111 P. (2d) 983. In the cited case, the car was being driven at the time of the accident by Enita McMillan, a nineteen-year-old girl. Her brother Donald was riding in the car. The car belonged to the father. There was a collision between the car being driven by Enita McMillan and one owned and being driven by A. R. Paulson. Paulson and wife brought an action against Miss McMillan and her parents for damages. Enita McMillan cross-complained. Mr. McMillan, as guardian

*ad litem* of Donald McMillan, cross-complained with respect to the injuries sustained by Donald. The cause was tried to a jury, which returned the following verdict:

" 'We, the jury in the above entitled cause, do find that neither party is entitled to recover against the other.' "

Mr. McMillan, as guardian *ad litem* for Donald, appealed. Among other errors claimed was one based upon an instruction given. The opinion states:

"The alleged error is contained in that portion of the instruction which we have italicized. Here, the court instructed the jury, as a matter of law, that Donald and Enita McMillan were engaged in a joint adventure. If there be any justification for such an instruction, it must be found in the evidence given by Enita McMillan Foster."

After setting out the testimony of Enita McMillan, the opinion continues:

"We see nothing in this evidence to warrant the court in holding, as a matter of law, that Enita and Donald McMillan were engaged in a joint adventure. In our opinion, there was not even sufficient evidence in the record to carry that issue to the jury. *There is no evidence of any contract.*" (Italics ours.)

The opinion then quotes the paragraph of the opinion in the *Carboneau* case, *supra,* beginning with the words, "The *sine qua non* of the relationship is a contract." After some further discussion of the testimony, and, after referring to and quoting from the case of *Lampe v. Tyrell,* 200 Wash. 589, 94 P. (2d) 193, the opinion states:

"The respondents, however, contend that, even if the instruction was erroneous, it was harmless error. This contention is made upon the ground that, under the *family car doctrine,* the negligence of Enita McMillan Foster (found by the jury's verdict) is, as a matter of law, imputable to her brother Donald. In the course of the respondents' argument, as it appears in their brief, it is said:

" 'He [Donald] is a member of the family; he was riding with his sister on a family venture in his parents' automobile, and under the rulings of this court in *Shirley vs. American Automobile Insurance Co.,* 163 Wash. 136 [300 Pac. 155], and [*Hurley v. Spokane*], 126 Wash. 213 [217 Pac. 1004], each member of the family must bear blame with

the others and the negligence of one is the negligence of the other.'

"These cases do not hold that the negligence of one member of a family will be imputed to another. The negligence was imputed, *not on the theory of family relationship,* but upon the theory that the members of the family were at the time engaged in a *joint enterprise.*" (Italics ours.)

In *Pence v. Berry,* 13 Wn. (2d) 564, 570, 571, 125 P. (2d) 645, we stated:

"The principles stated in the *Tyrell* and *Carboneau* decisions have been recognized and accepted in the following cases: *Moen v. Zurich General Accident & Liability Ins. Co.,* 3 Wn. (2d) 347, 101 P. (2d) 323; *Manos v. James,* 7 Wn. (2d) 695, 110 P. (2d) 887; *Paulson v. McMillan,* 8 Wn. (2d) 295, 111 P. (2d) 983."

■ It is our opinion, based upon the principles laid down in the *Carboneau* case, *supra,* that, under the facts of this case, the relationship of joint adventurer was not shown to exist between appellant and respondent, it being admitted by appellant that she entered into no agreement, and that there was no understanding whereby she was obligated to do anything, in so far as this trip was concerned—it was absolutely free. It may be admitted that both appellant and her brother were going to see their grandmother, but, as stated in the *Carboneau* case:

"A mere agreement, or concord of minds, to accompany one another upon an excursion, but without an intent to enter into mutually binding obligations, is not sufficient to create the relationship of joint adventure."

Was appellant a guest or licensee under § 6360-121, *supra?* The words "guest" and "licensee" are not defined by the statute, and we have found no case decided by this court wherein an attempt has been made to define those words. We have held, in certain cases, that a party riding in an automobile which was being operated by some other person was, or was not, a guest under the facts in the particular case. In most of the cases, we concluded that the party was either a guest or a joint adventurer, and the respective rights and obligations of the parties involved were decided upon that theory.

However, as contended by appellant, we have stated that, if the occupant of a car is not a guest of the owner or operator thereof at the time of the accident in which the occupant is injured, the exact nature of his legal status at the time is immaterial, for the statute (§ 6360-121) does not bar recovery by anyone other than "an invited guest or licensee, without payment for such transportation." *Pence v. Berry, supra,* at p. 569.

We have placed some limitation upon the meaning of the words "guest" and "licensee," for in the case of *Scholz v. Leuer,* 7 Wn. (2d) 76, 84, 109 P. (2d) 294, we stated:

"For the purposes of the instant case, the meaning of the words 'invited guest or licensee' can best be ascertained by considering them in connection with the phrase which immediately follows in the statute, that is, 'without payment for such transportation.' The qualifying phrase limits the scope of 'invited guest or licensee' by indicating plainly *that gratuitous carriage only is intended.* If there is payment for the transportation, the statute does not apply, and this does not mean that payment must necessarily be made in money. It is sufficient if the presence of the occupant directly compensates the operator or owner in a *substantial and material or business sense,* as distinguished from mere social benefit or nominal or incidental contribution to expenses." (Italics ours.)

The same thought is expressed in *Pence v. Berry, supra,* in the following language:

"While the statute does not specifically define the words 'guest' and 'licensee,' it is nevertheless clear, from the inclusion of the modifying phrase 'without compensation for such transportation,' that only gratuitous carriage was meant to be comprehended within those terms."

We do not find that this court, under facts such as we have in this case, has ever passed upon the specific question now being considered, namely: Where an adult member of the family is injured while riding in an automobile being operated by another member of the family, with the consent of the mother, the owner of the car, and such injured member sues the operator of the car for the injuries sustained, such action being based upon the alleged negligence of the

driver of the car, and where such injured person is not a joint adventurer, are the facts sufficient to establish that such injured person is a guest, within the meaning of our guest statute? However, we can see no reason why, under certain circumstances, a member of the family could not be a guest while riding in a so-called family car. While perhaps an unusual situation is presented where it is contended that one member of a family riding in a car, used at least to some extent for family purposes, and being operated by another member of the family, is a guest, it is not a situation which has not been passed upon by the courts in other jurisdictions.

In 4 Blashfield's Cyclopedia of Automobile Law and Practice (Perm. ed.) 303, we find the following statement:

"The operator may be a host, the passenger his guest, even though a family relation exists between them, such as that of parent and child, grandparent and grandchild, or husband and wife."

The same author, at p. 305, has the following to say relative to the construction of guest statutes:

"In construing such statutes their terms are not always to be taken in their literal sense, and the courts will consider not only the ordinarily accepted meaning of the words used, but also such interpretation as may have been applied to them under common law or similar statutes."

We have endeavored to find a case where a guest statute similar to our statute was construed and applied to facts which were so similar to the facts in the instant case as to make the principles announced in such case applicable here. The case of *Bradley v. Clarke*, 118 Conn. 641, 174 Atl. 72, had before it for consideration a guest statute similar to our statute. We are impressed with the reasoning of the decision, and we are of the opinion that the purposes of the passage of the guest statute in Connecticut should be held to be the purposes for which our statute was passed.

The cited case was an action brought by Marshall J. Bradley, administrator of the estate of Josephine C. Lindeman, against E. Mabelle Clark, to recover for the death of the plaintiff's intestate, alleged to have been caused by the

negligence of the defendant. The complaint alleged that on May 3, 1933, and for several weeks prior thereto, the plaintiff's intestate was living with her sister, the defendant, another sister, and their mother, at West Hartford. In the previous December, the husband of plaintiff's intestate died and was buried in the family plot in the Grove Street Cemetery in Putnam, which plot has a monument in the center with a marker at each grave. The defendant suggested to her sister and mother that they go to the cemetery for the purpose of agreeing on a marker that, in appearance and construction, would be in harmony with the surroundings, to arrange for the grading of the entire plot in view of the fact that the ground had sunk at places, and to designate the graves for the rest of the members of the family as well as to arrange for their future supervision. It was thereupon agreed (there was no agreement in the instant case) that it was for their mutual advantage that a trip to the cemetery be undertaken for these purposes, and, on the morning of May 3, 1933, the trip was undertaken in an automobile owned and operated by the defendant in which were riding with her the plaintiff's intestate, their sister and mother.

It was further alleged that, due to the negligent operation of the automobile by the defendant, it left the traveled portion of the road and crashed into a tree, whereby the plaintiff's intestate was killed. The automobile was one purchased by the defendant and used and maintained for her use and pleasure and that of the members of her family living with her, of which the plaintiff's intestate was one.

The complaint was demurred to, upon the ground that it appeared therein that the plaintiff's intestate was a passenger in the automobile, and that there was no allegation that the accident was intentional or caused by the defendant's heedless or reckless disregard of the rights of others, and that there was no fact alleged sufficient to take the case out of the operation of the "guest statute" (Gen. Stat., § 1628). The demurrer was sustained, and, the plaintiff refusing to plead over, judgment was entered in favor of the defendant, from which the plaintiff appealed. The opinion states:

"The only question involved in this appeal is whether the plaintiff, under the allegations of the complaint, was a guest within the meaning of this statute. The purpose of this legislation was to deny a recovery for negligence against one transporting in his automobile a *member of his family,* a *social guest,* or a *casual invitee* in an action brought by the recipient of his hospitality." (Italics ours.)

The court, after citing several cases, stated:

"The automobile was a family car, owned and driven by one of the members and used for a purpose in which all were interested. This is precisely the type of case to which the 'guest statute' was intended to apply; and, under these circumstances, we hold that the plaintiff's intestate was a guest within the meaning of the statute. There was not such a mutual benefit as to change his [her] status from that relationship."

■ The facts in the cited case go further than do the facts in the instant case. We are of the opinion the instant case is certainly one type of case to which our guest statute should, and in our opinion does, apply.

As hereinbefore stated, appellant relies principally upon the case of *Hart v. Hogan,* 173 Wash. 598, 24 P. (2d) 99, to support her contention that she was not a guest. We are of the opinion that the rules announced in the cited case are not controlling here, because of the different factual situation presented in the cited case, upon which the decision was based. Headnote No. 3, which is supported by the opinion, sufficiently shows the difference in the factual situation presented in the cited case:

"Negligence (23)—Imputed Negligence—Negligence of Driver of Vehicle Imputed to Occupant—Host and Guest— *Paid Companion.* One employed as nurse or companion to the wife of the owner of a car, driven by the wife for her own pleasure, is being carried in the business of the owner, and she and her minor daughter necessarily accompanying her as an *involuntary* passenger, are not guests within the rule of non-liability except for gross negligence." (Italics ours.)

The case of *Shirley v. American Automobile Ins. Co.,* 163 Wash. 136, 300 Pac. 155, is not controlling here, first, because as to the question of joint venture the cited case was dis-

cussed in *Carboneau v. Peterson, supra,* in considering the principles established by the latter decision. It is not in point on the second question discussed in this opinion for the reason that the opinion states, as to Hazel Regan Shirley:

"She was invited to accompany the Shirley family on the trip, and went along as a mere guest of the family."

For the reasons herein stated, the trial court did not err in denying appellant's motion for judgment notwithstanding the verdict, and in dismissing the action.

The judgment is affirmed.

MALLERY, C. J., BEALS, and STEINERT, JJ., concur.

MILLARD, J. (dissenting)—We held in *Pence v. Berry,* 13 Wn. (2d) 564, 125 P. (2d) 645, that, if an occupant of an automobile is not a guest—Mrs. Finn was not a guest—of the owner or operator of the vehicle at the time of the accident in which the occupant is injured, the exact nature of the occupant's legal status is not material, for the statute (Rem. Rev. Stat., § 6360-121) does not bar recovery by anyone other than "an invited guest or licensee, without payment for such transportation." We should follow that holding or overrule it.