ALLEN, Judge.
This case was consolidated with two other cases for trial. All three suits were against the City of Tampa and arose out of an intersectional collision between a car in which the plaintiffs rode as passengers and a police car of defendant city. The plaintiffs appeal from a judgment entered by the trial judge after directing a verdict for the defendant at the conclusion of all of the evidence.
The driver and owner of the car in which the plaintiff rode, Walter Armstede, testified that on the day before the involved collision he had his car brakes checked for a leak in the master cylinder. He was informed that the leak could not be repaired until the following day, but that the car was “usable-fair”. Armstede picked up two of his friends, Anderson and Smart, now deceased, husband of one of the plaintiffs in the consolidated suit, and they first went to a ball game, then to a bar where they each had one glass of wine; subsequently they met three girls, plaintiff Bryant, the plaintiff Ball, and another girl. There was evidence that the group had had alcoholic drinks but no evidence of intoxication. Armstede drove south on 22nd Street in Tampa, and as he approached 7th Avenue he saw the traffic signal blinking red as it faced him. He slowed down to second gear and started across the intersection where he had a collision with a car operated by Harold T. Ryals, a police officer of the defendant city. According to the testimony, Ryals was driving west on 7th Avenue when he saw a car enter 7th from 26th Street and he noted that this car was proceeding in a suspicious manner, as regards the sobriety of the driver. Ryals speeded up to around 40 to 45 miles per hour in order to follow the other car. However, he did not sound his siren nor turn on the patrol car’s special lights, nor consider the situation an emergency.
The car above mentioned passed 23rd Street, which was controlled by a blinking yellow light, and as Ryals approached the same intersection, he suddenly saw Arm-stede’s car. Ryals applied his brakes, but could not avoid Armstede’s vehicle, with which his patrol car then collided.
The patrol car skidded some 41 feet to the point of impact and traveled to a point 63 feet west of the intersection where it came to rest facing east. Armstede’s car made no skid marks, and traveled to a point 20 feet south of the intersection where it came to rest facing at a 90 degree angle to the street.
The involved intersection had buildings’ on all four corners, which somewhat obstructed the view of the driver approaching from any direction. The intersection measured 35 feet and 6 inches along 22nd Street, and 44 feet and 9 inches along 7th Avenue. Ryals was familiar with the intersection.
Certain ordinances of the City of Tampa, which were introduced into evidence, provided, among other things, that emergency vehicles must observe all city traffic laws unless on an emergency; that even on emergency they may go only 45 miles per hour; that such vehicle may sound its. siren only when on emergency; that, at an intersection, the driver first entering has the right-of-way and if two cars reach the intersection at the same time, the vehicle on the right has the right-of-way over the one on the left; that all vehicles are to be driven at a safe speed under the conditions of street, weather, etc.; and that the speed limit, unless otherwise indicated, is 25 miles per hour, there being no exception indicated as to 7th Avenue and 22nd Street.
There was no evidence in the record that showed that the condition of the brakes on Armstede’s car contributed to the collision, nor was there any evidence that the passengers were aware of the condition of the brakes of Armstede’s car.
The defendants, at the conclusion of all the evidence, moved for a directed verdict on the following grounds:
(1) Defendant’s driver was not negligent;
*667 (2) Plaintiffs were contributorily negligent ; and
(3) All in Armstede’s car were on a joint mission of pleasure which made the driver’s negligence imputable to the passengers.
The Circuit Judge granted the motion and directed the jury to enter a verdict of not guilty for the defendant city.
The record shows that the police officer was exceeding the speed limit of the defendant city at the time of the collision, which would create a prima facie showing of negligence on the part of the defendant city. The Florida Supreme Court, in the case of Allen v. Hooper, 1936, 126 Fla. 458, 171 So. 513, held that the violation of a traffic law is prima facie evidence of negligence, but that such prima facie evidence may be overcome by proof of surrounding circumstances and conditions which eliminate the character of negligence from the transaction. Therefore, when it is shown that the traffic law has been violated, it is a question for the jury to determine whether or not the prima facie negligence is overcome by other evidence of existing facts and circumstances.
In the case of Gudath v. Culp Lumber Co., Fla.1955, 81 So.2d 742, 744, 53 A.L.R.2d 846 the court said :
“ * * * We hold, then, that the violation of a municipal ordinance relating to passing at intersections, as in the case of violations of other traffic laws or regulations, is only ‘prima facie evidence of negligence that may be overcome by other facts and circumstances in the cause of fixing ultimate liability’, * * *.”
It may be noted that an earlier Florida case, Gosma v. Adams, 1931, 102 Fla. 305, 135 So. 806, 78 A.L.R. 1193, seemed to hold such violation as negligence per se.
The later cases, including the two above cited, were, therefore, primarily concerned with pointing out that such violations are only prima facie evidence of negligence, not negligence per se. However, the fact remains that such violations are prima facie evidence of negligence, the rebuttal of which raises a jury question.
We find no evidence in the record that would justify a conclusion, as a matter of law, that Armstede, the driver of the plaintiff’s car, was negligent, but if such fact of negligence was shown as a matter of law, we do not find facts in the record which show, as a matter of law, that such negligence could be imputed to the plaintiffs.
“The doctrine of imputed negligence by which a plaintiff, guilty of no personal negligence on his own part, is charged with the negligence of another person and barred from recovery for injuries proximately caused by the concurring negligence of the defendant and such third person is generally repudiated in this country, except in limited classes of cases. It is well settled that the negligence of the driver of an automobile generally will not be imputable to a passenger therein who has no authority or control over the car or over the driver so as to bar his recovery against a third person whose concurring negligence was a proximate cause of the plaintiff’s injury. In the absence of a joint enterprise between the driver and the plaintiff or of some element of agency relation between the two, contributory negligence on the part of the driver will not ordinarily be imputed to a guest or invitee if the latter relies on the skill and judgment of the driver and does not attempt to impose his will on the driver to see that the machine is properly driven. For example, the negligence of a husband will not be imputed to his wife who was riding with him in the car, and the negligence of a chauffeur in driving an automobile is not in general imputable to a person riding in the automobile but having no authority or control over *668 the vehicle or the driver.” 3 Fla.Jur. Automobiles § 175.
The same authority above mentioned, in § 177, Joint Enterprise, states the following-:
“While as a general rule negligence of an automobile driver is not imputable to his passenger or to persons who ride with him, if the driver and his passenger have united m a joint enterprise, in the joint prosecution of' a common purpose under such circumstances that each has authority, express or implied, to act for all in respect of the control of the means or agencies employed to execute such common purpose, the negligence of one in the management of the automobile will be imputed to the others. The test of joint enterprise between the driver of an automobile and another occupant is whether they are jointly operating and controlling the movements of the vehicle; there must be a common purpose and a community of interest in the object of the enterprise and an equal right to direct and control the conduct of each other. There are three essential elements, namely: an agreement, express or implied, to enter into an undertaking; a community of interests in the objects and purposes to be accomplished; and joint and equal control and authority. It is not sufficient to establish a joint enterprise between the driver of an automobile and his passenger, such as will charge the latter with the negligence of the driver in operating the automobile, that the passenger indicates the route or that both parties have certain plans in common, such as a ‘joy ride’; the community of interest must be such that the passenger is entitled to be heard in the control and management of the vehicle, such as practically to amount to joint or common possession thereof. Nor does the fact that the guest agreed to pay the expenses of a trip necessarily establish a joint enterprise. There can be no joint enterprise between a passenger and a driver without an agreement, express or implied, to enter upon an undertaking, in the objects and purposes of which the parties have a community of interest, and in the pursuit of which they have equal authority. Mutuality of control over the subject matter is essential to the existence of a joint venture.”
See also Bessett v. Hackett, Fla.1953, 66 So.2d 694; and Astor Electric Service, Inc., v. Cabrera, Fla.1952, 62 So.2d 759.
We are of the opinion that the evidence in this case fails to show, as a matter of law, that the purported negligence of the driver, Armstede, could be imputed to this-plaintiff.
We are therefore of the opinion that the lower court was in error in directing a verdict for the defendant city.
Reversed and remanded.
KANNER, C. J., and SHANNON, J., concur.