198 So.2d 103 (1967)
Reuben KAPLAN, Individually, and Reuben Kaplan, As Administrator of the Estate of Mitchell Mark Kaplan, Deceased, Appellant,
v.
David Craig WOLFF, Irving Wolff, Cathie V. Wolff, and Harold Kassewitz, Appellees.
No. 66-197.
District Court of Appeal of Florida. Third District.
April 18, 1967.
Rehearing Denied May 15, 1967.
*104 Nichols, Gaither, Beckman, Colson, Spence & Hicks, Podhurst & Orseck, Miami, for appellant.
Dixon, DeJarnette, Bradford, Williams, McKay & Kimbrell, Miami, for appellees.
Before HENDRY, C.J., PEARSON, J., and EATON, JOE, Associate Judge.
PER CURIAM.
Reuben Kaplan, individually and as administrator of the estate of his son, Mitchell Kaplan, sued the defendants for the wrongful death of his son. The jury returned a verdict in favor of the defendants and judgment was entered thereon.
On the night of August 10, 1964, seven teenage children were riding in a car owned by Harold Kassewitz. His daughter, Terry, had borrowed the car with her father's permission and consent. The seven got together about 9:00 P.M., and from that time until the time of the accident at approximately 11:30 P.M. the seven drove around Miami Beach for an evening of pleasure and companionship with no particular destination.
Terry began the evening as the driver but soon thereafter stated she didn't want to drive. No one wanted to drive because everyone was fooling around in the car. However, Alan Scharfman took over the duties of driver.
Shortly before the collision, Alan drove to Biscayne Point, an island portion of Miami Beach. The island is divided by interior canals over which there are small bridges having rather steep inclines. There is testimony that one of the girls in the group requested that they go to this island, and that all of the group knew that they were going there to get a "bump" or "kick" when going over the bridges. Alan drove over the bridges four times, including the bridge involved in the accident which has a sharp curve immediately after the bridge. The speeds while going over the bridges were estimated to be from 25-40 m.p.h.; the speed limit on the bridge involved is 15 m.p.h.
Alan brought the car to a stop before going over the bridge again. The deceased, Mitchell Kaplan, suggested that David Wolff drive because he would feel safer with him. A discussion took place concerning the change of drivers and going over the bridge. The car was standing still for ten to fifteen minutes during the discussion and during the change of drivers from Alan to David Wolff.
David turned left, drove over a little bridge, came to an intersecting stop street and stopped. He then turned left and was one long block (two or three normal city blocks) from the bridge involved. He accelerated to approximately 50 m.p.h. and drove onto the bridge. The car jumped into the air, came down the other side of the bridge and failed to negotiate the curve. *105 The car struck and severed a telephone pole and was demolished. Mitchell Kaplan was killed as a result thereof.
One of the girls in the back seat testified that she yelled to David to stop when the car was approximately two car lengths from the bridge and at the same time changed from the right rear window seat to a middle seat with the deceased. There were four passengers in the back. The two other passengers in the back testified that they heard the protest. The two passengers in the front and the driver testified that they heard no one say stop or give any protest.
First, it may be pointed out that the errors urged are all directed to the charge of the court. They are listed as points on appeal as follows:
I. Under the evidence, did the court err in charging on the subject of joint enterprise?
II. Did the court err in giving its instruction to the jury on the subject of passenger protest or warning?
III. Did the court err in refusing to give plaintiffs' requested charge regarding termination of guest passenger status?
IV. Under the evidence, did the court err in charging the jury on assumption of risk?
V. Under the evidence of the case, did the trial court err in refusing to instruct the jury that the deceased person was presumed to have exercised due care for his own safety?
In determining whether the court erred in charging on the subject of joint enterprise, it is necessary to determine how the subject was presented to the court. The issue of joint enterprise was interjected into the cause by the answer of the defendants, appellees. The appellant does not urge that it was improperly in the case but rather that upon the facts adduced it should not have been the subject of an instruction. In other words appellant's contention is: "Such a defense is a proper one in a guest passenger case, but it is improper to instruct the jury that such a defense is applicable when the elements of proof thereof are absent."
The defense of "joint enterprise" is not a defense as between the passengers and the driver. Dosher v. Hunt, 243 N.C. 247, 90 S.E.2d 374 (1955); O'Brien v. Woldson, 149 Wash. 192, 270 P. 304, 62 A.L.R. 436 (1928). There is no showing in this record that this fact was urged in the trial court, nor is it included in the assignments of error. Appellant's position is simply that the charge should not have been given.
The issue of "joint enterprise" may be relevant in determining the status of a passenger. The passenger can rely upon a joint enterprise relationship to overcome the requirements of guest statutes. Pence v. Berry, 13 Wash.2d 564, 125 P.2d 645 (1942); O'Brien v. Woldson, 149 Wash. 192, 270 P. 304, 62 A.L.R. 436 (1928). Thus, the issue is usually injected into a case by plaintiff's contention that he was not a guest passenger to be subjected to the restrictions of the guest passenger statute. (Section 320.59, Fla. Stat., F.S.A.) But this was not the situation at the trial of the present case. The plaintiff admitted that he was a guest passenger and the defendant nevertheless requested an instruction on "joint venture." The plaintiff-appellant here does not argue that the charge should not have been considered but urges simply that it should have been rejected by the court because one of the essential elements necessary for the existence of a "joint venture" was not proved.
The elements of a joint enterprise are: "(1) There must be an agreement, express or implied, to enter into an undertaking. (2) In such undertaking there must be community of interest in the objects and purpose to be accomplished. (3) The parties to such an enterprise must, in pursuance of it, have equal authority. Yokom v. Rodriquez, Fla. 1949, 41 So.2d 446, 448. It seems clear that the facts before the jury were *106 sufficient to sustain a finding that the first two elements mentioned in Yokom v. Rodriquez, were present in the instant case. Whether a joint enterprise existed is commonly a question of fact for the jury, except where the evidence as to its existence is insufficient to go to the jury.[1]
The position of the appellant is that the charge on joint enterprise was improperly given, because the third element above mentioned [(3) The parties to such an enterprise must, in pursuance of it, have equal authority] was not present in the evidence. We hold that there was a jury question on the existence of the element. The testimony that these teenagers were changing drivers by the vote of the group, and that the person to whom the car was first entrusted had abandoned that responsibility, are two of the factors which would seem to qualify control as a question for the jury.
It should be noted that we are not holding that the passenger-driver relationship infers any right of control. The joint enterprise doctrine as applied in automobile liability situations is subject to some criticism. However, the doctrine does exist in Florida in a very limited class of cases. See Union Bus Co. v. Smith, 104 Fla. 569, 140 So. 631 (1932). When the testimony in a case is such, that under a reasonable view of the evidence the element of mutual control may be present, then the jury should be allowed to determine if there was mutual control. In this connection we take it as accepted that it is not necessary to show that the passenger was in actual control. The question to be decided by a jury is the right to control. One should be able to show, as is a reasonable view of the evidence here, that the driver had surrendered his exclusive control, and that the driver and the passenger had a mutual right to direct each other in the management of the vehicle.
Appellant's second and third points are directed to alleged errors in the instruction pertaining to the effect of a fellow passenger's protest. The court went on to charge the jury that if they find from the evidence that a warning was given the driver, the warning would have no effect unless the driver heard it and had a reasonable opportunity to heed the warning and avoid the accident. The court further charged the jury that a warning by any other person than the deceased would not be material. The plaintiff argues that such a protest does inure to the benefit of the deceased.
The duty of a guest passenger is to make some "reasonable" attempt through suggestion, warning, protest or other means suitable to the occasion to control the conduct of the driver under the circumstances. See Bessett v. Hackett, Fla. 1953, 66 So.2d 694, 699. What is reasonable is a question for the jury and may include a protest by a fellow passenger.
The evidence indicates that the alleged protest was not a demand to be let out of the automobile and that the alleged accompanying action of switching seats was not that which would indicate a demand to be let out.
The appellant contends that under the circumstances of this case, his deceased may have been entitled to the benefit of a fellow passenger's protest. The law is such that under certain circumstances this is true.[2] But we hold that the evidence did not present a jury question on the issue of the protest. There is no reasonable view of the testimony which would make the fellow passenger's protest available to the appellant. The protest made at a point two car lengths from the bridge, when the car is already going 50 miles per hour, was unavailing. *107 Therefore, the failure to instruct that the plaintiff might have the benefit of a fellow passenger's protest, was harmless error.
Appellant's fourth point raises the question whether the court erred by instructing on assumption of risk. In the charge to the jury the court informed the jury that the defendants also alleged the defenses of contributory negligence and assumption of risk. The court instructed the jury that if they found that the deceased was guilty of contributory negligence proximately contributing to his death, there could be no recovery by plaintiff.
The facts of this case are such that the defenses of contributory negligence and assumption of risk overlap, and both are available to the defendants.
"Contributory negligence may consist not only in a failure to discover or appreciate the risk which would be apparent to a reasonable man * * * but also in an intentional exposure to a danger of which the plaintiff is aware."[3] In the latter circumstances, "plaintiff's conduct may indicate his consent or willingness to encounter the danger and relieve the defendant of responsibility, and hence the controversial defense of assumption of risk may also be available as a defense, overlapping contributory negligence."[4]
In this situation, the instruction encompasses both defenses and since both are available to bar the action, it makes no difference what the defense is called.[5]
We previously discussed the fact that it would be reasonable to find that all of the passengers knew that the vehicle was to be driven over the bridge at excessive speeds, and that they had previously been over the same bridge. Therefore, the deceased's conduct in remaining in the vehicle after it had been standing still for 10-15 minutes could reasonably be inferred to indicate his consent to encounter the danger with an appreciation of that danger so as to relieve the driver of responsibility. The plaintiff argues that if the deceased did assume a known risk, it was not that of going 50 m.p.h. over the bridge, as the prior trips were at lesser speeds. However, if the jury should find that the deceased assumed the risk of gross negligence or wilful and wanton conduct, the law will not undertake to divide such conduct into degrees.[6] Further, even if the jury found that the deceased did not actually know of the danger, but that he failed to discover or appreciate a danger which would be apparent to a reasonable man, then this would also bar recovery.
After the vehicle was moving, it could be found that the deceased was further contributorily negligent by failing to discharge his duty as a guest to make some reasonable attempt to control the conduct of the driver once the car reached an excessive and dangerous rate of speed under the circumstances of the occasion.[7]
Finally, we find no error, under the circumstances of this case, in the court's refusal to instruct the jury that a deceased person is presumed to have exercised due care for his own safety.
Affirmed.
EATON, JOE, Associate Judge, concurs in result only.
NOTES
[1] 4 Blashfield, Cyclopedia of Automobile Law and Practice § 2372 at 500 (1946).
[2] Ragland v. Snotzmeier, 186 Ark. 778, 55 S.W.2d 923 (1933); Norton v. Puter, 138 Cal. App. 253, 32 P.2d 172 (1934); Bynon v. Porter, 336 Pa. 441, 9 A.2d 357 (1939); Boyce v. Black, 123 W. Va. 234, 15 S.E.2d 588 (1941); Smith v. Marquette Casualty Company, 247 La. 1054, 176 So.2d 133 (1965).
[3] Prosser, Torts § 64 at 434 (3rd Ed. 1964).
[4] Id.
[5] Henley v. Carter, Fla. 1953, 63 So.2d 192, 44 A.L.R.2d 1339; Gavel v. Girton, Fla. App. 1966, 183 So.2d 10; Prosser, op cit. supra note 3, § 67 at 452.
[6] See Roberts v. King, 102 Ga. App. 518, 116 S.E.2d 885, 888 (1960).
[7] Bessett v. Hackett, Fla. 1953, 66 So.2d 694, 699; Smart v. Masker, Fla.App. 1959, 113 So.2d 414; Bordelon v. Couvillion, La. App., 130 So.2d 453 (1961), assumed risk of speeding contest and negligent in failing to discharge duty to protest once underway.