240 So.2d 822 (1970)
James D. CONNER, Appellant,
v.
The SOUTHLAND CORPORATION, a Texas Corporation, Cook-Quik, Inc., a Florida Corporation, Herman Sausage Company, Inc., a Florida Corporation, Velda Dairy Farms, Inc., a Florida Corporation, Robert H. Houck, Richard W. Pinson and Woodrow Montgomery, Appellees.
No. 69-335.
District Court of Appeal of Florida, Fourth District.
September 30, 1970.
Rehearings Denied December 7, 1970.
*823 Larry Klein of Cone, Wagner, Nugent, Johnson, McKeown & Dell, West Palm Beach, for appellant.
Robert Michael Hutcheson and Cliff B. Gosney, Jr., of Law Offices of Cliff B. Gosney, Jr., Daytona Beach, for appellees  Richard W. Pinson; Cook-Quik, Inc.; and Herman Sausage Company, Inc.
Frank R. Pound, Jr., of Howell, Kirby, Montgomery & D'Aiuto, Rockledge, for appellees  Robert H. Houck; Velda Dairy Farms, Inc.; and The Southland Corporation.
WALDEN, Judge.
This is an automobile negligence suit. Questioned is the allowability of the defense of joint enterprise under a car pool arrangement.
Plaintiff's employment by the School Board took him daily from Titusville to Cocoa and return. He teamed up with two fellow employees in a car pool. Each in daily turn furnished and drove his own car as transportation for the three of them to and from work. The arrangement had been operative for several months. No money or other consideration changed hands and each participant had exclusive control of his own vehicle as his day or turn to drive was reached.
While in such transit on a day when plaintiff was a passenger in the car being operated by his co-employee, Woodrow Montgomery, a chain collision occurred which involved the car pool vehicle and three other vehicles. Plaintiff was injured. He sued his own driver, Montgomery. He also sued the drivers and owners of the other three vehicles charging negligence.
The drivers and owners of the other three vehicles affirmatively plead the defense of joint enterprise. This means that if plaintiff and his driver were engaged in a joint enterprise, any negligence on the part of the driver, Montgomery, would be imputed to his passenger, the plaintiff, and this would serve to bar plaintiff's recovery against these defendants. Plaintiff objected to the use of this defense at appropriate times. Regardless, the trial court submitted the issue of joint enterprise to the jury and instructed them with Standard Jury Instruction 3.3(F). It provides:
"[W]hether (driver) was operating the automobile at the time and place of the [collision] [incident complained of] to further the purposes of a joint enterprise in which he was engaged with (defendant passenger). A joint enterprise exists when two or more persons agree, expressly *824 or impliedly, to engage in an activity in which they have a common interest in the purposes to be accomplished and equal rights to control and manage the operation of an automobile in pursuance of the enterprise. Each member of a joint enterprise is responsible for the negligence of another member in the operation of the automobile if such negligence occurs while he is acting under the agreement and to further the purposes of the joint enterprise."
The jury returned a verdict in favor of the plaintiff in his claim against his own driver. The jury further returned a verdict in favor of the owners and drivers of the other three vehicles as concerns plaintiff's claims against them. This is compatible with a jury application of the joint enterprise doctrine.
Plaintiff is aggrieved because the jury absolved the owners and drivers of the other three vehicles. He asserts that it was reversible error for the court to entertain the defense of joint enterprise and submit same to a jury on a car pool situation such as here revealed. We agree.
Outlined in Yokom v. Rodriguez, Fla. 1949, 41 So.2d 446, are the three essential elements of a joint enterprise situation. They are:
1. There must be an agreement, express or implied, to enter into an understanding.
2. In such undertaking there must be a community of interest in the objects and purposes to be accomplished.
3. The parties to such an enterprise must, in pursuance of it, have equal authority.
It seems clear that numbers 1 and 2 above are successfully evident. The question revolves around number 3  whether or not the three participants had equal authority as concerns the operation of the vehicle at the time and place. To put it more exactly, in Yokom, supra, it was stated that to establish a joint enterprise
"* * * the community of interest must be such that the passenger is entitled to be heard in the control and management of the vehicle  such as practically to amount to joint or common possession thereof." See also Bessett v. Hackett, Fla. 1953, 66 So.2d 694.
We learn from the case of Georgia Southern and Florida Railroad Company v. Shiver, Fla.App. 1965, 172 So.2d 639, that the general rule in Florida is that the negligence of a driver of a motor vehicle is not imputable to his passenger. However, there are three exceptions therein noted, such as,
"[W]hen the passenger has authority or control over the driver or the vehicle, (1) by imposing his will on the driver to see that the vehicle is properly driven, (2) where such authority or control exists by virtue of the relationship of agency or Joint Enterprise between the driver and passenger, or (3) where the passenger knows or should know that the driver is not exercising that degree of care essential to the passenger's safety so that the law imposes a duty upon the passenger to warn, protest, or take other action, and the passenger fails in this duty even though he has sufficient time to protest and realizes that he should intervene for his own safety."
The court further furnished background explanation as concerns the doctrine of joint enterprise and imputed negligence by quoting from Potter v. Florida Motor Lines, Inc., 57 F.2d 313, 315 (S.D.Fla. 1932), as follows:
"The doctrine of imputed negligence, when asserted in cases involving a joint enterprise, rests upon the maxim `Qui facit per alium, facit per se.' In such cases, in order to impute the negligence of the driver to another person riding in the car, the parties must stand in such relation to each other that the maxim just quoted directly applies to their case. Bryant v. Pacific Electric R.C., 174 Cal. *825 737, 164 P. 385; Louisville, N.A. & C. Ry. Co. v. Creek, 130 Ind. 139, 29 N.E. 481, 14 L.R.A. 733; 45 C.J. 1019. That maxim can apply only in cases where the relationship of the parties is in effect that of partnership, principal and agent, or master and servant, or when the circumstances are such that the vehicle, though manually operated by one person, is in the actual control of another.
"As a legal concept, joint enterprise is not a status created by law. It is a voluntary relationship, the origin of which is wholly ex contractu. Liability of one member of a joint enterprise for the acts of another member is a vicarious liability founded upon the relationship, and springs from the operation of law upon the relationship into which the parties have voluntarily brought themselves by contract." (Emphasis supplied by court.)
We particularly note with reference to the above quote that in the instant case it can in nowise be said that "the circumstances are such that the vehicle, though manually operated by one person, is in the actual control of another."
The theory of joint enterprise doctrine is that there exists between the members of the enterprise such a community of interests and mutuality of control that all the members should be vicariously liable for the acts of their fellow members  amounting to a sort of quasi-partnership.
In reality, even in the automobile cases in which the joint enterprise doctrine (e.g. several people rent one car for a trip and share expenses) clearly applies, the occupants of the auto have no actual physical control over the driver to prevent negligent acts by him. However, they are held responsible for his acts because they are deemed to sanction them because they put him in control of the auto and possess the power to remove him from the driver's seat and replace him with another member if they are dissatisfied with his driving (respondent superior). As stated by 3 Fla. Jur., Automobiles, etc., § 177,
"[T]he community of interest must be such that the passenger is entitled to be heard in the control and management of the vehicle, such as practically to amount to joint or common possession thereof." Bessett v. Hackett, Fla. 1953, 66 So.2d 694.
In car pool arrangements, again, the occupants have no physical control over the driver's negligence acts. Additionally, their control over his negligent driving is only the same as that of a guest. They can demand that he correct his faults or that he let them out of the car. Their only real control over the driver's actions is to threaten to discontinue the arrangement. Furthermore, in car pool arrangements, the occupants have no power to remove the driver from behind the wheel of his own car. In other words, they don't have control amounting to joint or common possession.
There is no law in Florida as to whether a car pool arrangement amounts to a joint enterprise. However, the three states who have been confronted with the question, Illinois, California and Louisiana, all held that a car pool arrangement did not amount to a joint enterprise because there was insufficient control over a person driving his own car. Bridgewater v. Wagoner, 1969, 28 Ill. App.2d 201, 170 N.E.2d 785; Fisher v. Johnson, 1925, 238 Ill. App. 25; Scherer v. Southern Pacific Co., 1934, 140 Cal. App. 528, 35 P.2d 356; Husser v. Bogalusa Coca Cola Bottling Company, Inc., La. App. 1968, 215 So.2d 921.
Likewise, 8 Am.Jur.2d, Automobiles and Highway Traffic, § 679, states:
"An ordinary `car pool' or `share-the-ride' arrangement between two or more drivers, whereby each takes turns in driving his respective motor vehicle back and forth to work, does not constitute a joint enterprise."
*826 Finally, in Restatement (Second) of Torts § 491 (1965), dealing with joint enterprise, the following example is given:
"A and B are partners in a business carried on in the City of X. They live in adjacent houses in a suburb of X. The partners drive to town one day in A's car, another day in B's car. In neither case is the drive to their office in X a joint enterprise of A and B."
The testimony of all the members of the car pool is to the effect that no one had control of the vehicle except the driver of the vehicle. The only "control" which can be said to be imposed on the driver is that of the terms of the arrangement (when and where they would depart and the destination). This is not the sort of control contemplated by the joint enterprise doctrine.
An understanding comment which reflects the unpopularity or dissatisfaction with the joint enterprise doctrine is found in Dean Prosser, The Law of Torts, Second Ed., p. 367:
"If the question were now to be raised for the first time, arguments might be advanced against the vicarious liability of the passenger who is engaged in a `joint enterprise.' The `control' which is ascribed to him is usually only too obviously a fiction, upon which is erected a second fiction, that the driver is his servant. In the usual case, he has no physical ability to control the operation of the car, and no opportunity to interfere with it. Unless the limitation to business ventures approaching a partnership is to be accepted, the doctrine will most often be applied to enterprises which are not commercial and are matters of friendly cooperation and accommodation where there is not the same reason for placing all risks upon the enterprise itself. Normally it is the driver, and not the passenger, who might be expected to carry insurance. The apparent restriction of the doctrine to vehicle cases suggests that its real basis is a fear of the peculiar hazards of traffic. It has been said that the courts do not regard it with favor, but it is too firmly established in American law to be at all likely to be discarded."
Upon reflection as concerns all the above principles, we announce our opinion that the doctrine of joint enterprise is not available as a defense in a car pool arrangement such as reflected in the instant case. We think it was error for the trial court to allow such defense and to submit it to the jury.
We reverse and remand for a new trial to be held in accordance with the views herein expressed.
Reversed and remanded.
CROSS, C.J., and REED, J., concur.