ALTENBERND, Judge.
The plaintiffs, Kristine Kane and her parents, Gary and Virginia Kane, appeal a judgment in favor of the defendants, Commercial Carrier Corporation and its driver, Raymond Leroy Portwood. This case arises from an automobile accident between Commercial Carrier’s truck and a car in which Miss Kane was a passenger. The jury determined that Miss Kane was involved in a joint enterprise with the driver of the car in which she was a passenger. We hold that the evidence in this case does not permit the application of the joint enterprise doctrine. In so holding, we observe that this case concerns only that joint enterprise doctrine which shifts the risk of a tortfeasor’s collectibility from a joint tort-feasor to the injured plaintiff.
I. THE CASE AND THE FACTS
On February 14, 1986, Kristine Kane and her friend, Karlene Ludwig, decided to attend a party given by a schoolmate at a location north of Tampa, Florida. On that day, Miss Kane was fifteen years old and possessed only a learner’s permit. Miss Ludwig was sixteen years old, had a valid driver’s license, and had permission to use her grandparents’ car. Miss Ludwig drove north on Dale Mabry Highway in Hillsbor-ough County, while Miss Kane gave directions from a hand-drawn map. While they were turning left onto Van Dyke Road, their car was struck on the passenger’s side by a tanker truck, owned by Raymond Leroy Portwood and Commercial Carrier Corporation, and driven by Mr. Portwood. Both girls stated that they had no recollection of the events immediately preceding the accident, except that they were looking for the correct road when they were struck by the tanker truck.
Through her parents, Miss Kane filed suit against Commercial Carrier and Mr. Portwood, and also against Miss Ludwig and her grandparents, Roy and Hilda Quinn. Additionally, Miss Ludwig sued Commercial Carrier and Mr. Portwood. Commercial Carrier and its driver answered both lawsuits. They raised the defense of joint enterprise and also filed a cross-claim against Miss Ludwig and her grandparents for contribution pursuant to section 768.31, Florida Statutes (1989), seeking a pro rata share of any damages they might ultimately pay to Miss Kane.
These cases were consolidated for trial and tried in 1989. At the beginning of the trial, Miss Kane and her parents settled with Miss Ludwig and her grandparents for $100,000. Following several days of trial, the jury returned verdicts in favor of both plaintiffs. Concerning Miss Ludwig, the jury found that she was 65% comparatively negligent, that Commercial Carrier and its driver were 35% negligent, and that her damages totalled $20,000. Any judgment entered on that verdict is not involved in this appeal. Concerning Miss Kane, the jury awarded total damages of $160,000. The jury, however, found that the two teenagers were involved in a joint enterprise and imputed Miss Ludwig’s 65% negligence to Miss Kane.[1]
*982 In light of the verdict on joint enterprise, the defendants filed a posttrial motion requesting that the verdict be reduced to $56,000 to reflect the imputation of Miss Ludwig’s negligence to Miss Kane. Moreover, the posttrial motion requested that the defendants receive the benefit of the $100,000 settlement as a settlement with a joint tortfeasor pursuant to sections 768.-041 and 768.31 of the Florida Statutes (1989). The trial court granted both requests. Accordingly, Miss Kane and her parents received a judgment for zero dollars.
It is significant to note that this case does not involve any theory of direct comparative negligence on the part of Miss Kane. Because of the limited evidence of the two girls' actions immediately preceding the accident, there was no basis for Miss Kane’s judgment to be reduced by any comparative negligence. Her judgment was reduced only by theories which imputed the driver’s negligence to her.
II. THE JOINT ENTERPRISE DOCTRINE AS A METHOD TO SHIFT THE RISK OF A NEGLIGENT DRIVER’S COLLECTIBILITY TO A SOCIAL PASSENGER IN A MODERN TORT ACTION
Before one can decide whether the joint enterprise doctrine applies in this case, it is necessary to define this doctrine. In doing so, the joint enterprise doctrine should be distinguished from concepts of joint venture. Because the joint enterprise doctrine has served several different functions during the last fifty years, it is also important to understand its historical uses as contrasted to its current function. As we will explain, the current doctrine is a judicially created alternative to joint and several liability. Although it avoids some of the harsher results of joint and several liability, the legislature has chosen to control those extreme results in a wider range of cases through other statutory methods. Hence, we conclude that the current joint enterprise doctrine must be conservatively applied in order to permit full usage of the legislative solutions. Under a conservative application, this case does not involve facts which authorize the use of the joint enterprise doctrine.
A. Distinguishing a Joint Enterprise from a Joint Venture.
This case involves a joint enterprise and not a joint venture. “Joint enterprise,” “joint adventure,” and “joint venture” have frequently been used in an interchangeable fashion. In some contexts, however, these terms connote different legal relationships. Interchanging legal concepts with different definitions may easily confuse legal analysis.
“Joint venture” is a legal term used to describe a type of business relationship. In general, it is a combination of persons to undertake a particular business transaction under conditions similar to a partnership. 8 Fla.Jur.2d Business Relationships' § 679 (1978); W. Keeton, W. Prosser, The Law of Torts § 72 (5th ed. 1984). “Joint adventures” also seem to involve business relationships. Indeed, this court has equated a joint venture with a joint adventure. Klaber v. Klaber, 133 So.2d 98 (Fla. 2d DCA 1961).
By contrast, a joint enterprise is a non-business relationship. Florida Standard Jury Instructions (Civil) 3.3e and 3.3f recognize this distinction and limit the use of the joint enterprise instructions to cases involving automobile liability. There is no dispute that this case concerns a joint enterprise and does not involve a joint venture.
B. The Historical Uses of Joint Enterprise
A leading treatise observes: “Considerable confusion still surrounds the [joint enterprise] doctrine, which no one has succeeded in reducing to any very exact formula or definition.” Keeton, Prosser, The Law of Torts § 72 at 518. This confusion exists in part because the “doctrine” has been applied in at least five different contexts, each addressing distinct legal issues with varying and sometimes juxtaposed underlying policies.
*983 First, the joint enterprise doctrine was extensively used as a method to avoid the harsh result of the guest passenger statute. See ch. 18033, § 1, Laws of Fla. (1937) (codified at § 320.59, Fla.Stat. (1941)). A plaintiff would affirmatively plead that the accident was the fault of a driver with whom the plaintiff/passenger had a joint enterprise. Roberts v. Braynon, 90 So.2d 623 (Fla.1956); Yokom v. Rodriguez, 41 So.2d 446 (Fla.1949); Cline v. Schoenberger, 234 So.2d 372 (Fla. 2d DCA 1970); Bramble v. Garris, 144 So.2d 324 (Fla. 2d DCA 1962); Kaplan v. Wolff, 198 So.2d 103 (Fla. 3d DCA), cert. denied, 204 So.2d 328 (Fla.1967); McGowan v. Wilson, 154 So.2d 331 (Fla. 3d DCA 1963). The existence of a joint enterprise negated the passenger’s guest status. As a result, the passenger could recover against the driver on a theory of simple negligence.
It should be obvious that policies which create a remedy for a plaintiff must be substantially different than policies which prohibit or reduce a plaintiffs recovery. Thus, precedent that defines joint enterprise for purposes of the guest passenger statute is not controlling precedent in this ease. If that precedent did not depart with the guest passenger statute,[2] it remains only as a remnant of the past.
Second, the joint enterprise doctrine was used to impute the driver’s negligence to the passenger, as a method of contributory negligence, to completely prohibit the passenger from recovering against a negligent third party. Bessett v. Hackett, 66 So.2d 694 (Fla.1953); Bryant v. City of Tampa, 100 So.2d 665 (Fla. 2d DCA 1958); Conner v. Southland Corp., 240 So.2d 822 (Fla. 4th DCA 1970). This imputation of contributory negligence is recognized in the Restatement (Second) of Torts sections 490-491 (1965). Under this theory, a defendant effectively becomes a third-party beneficiary of an oral, nonbusiness contract. The defendant is not obligated to pay for damages to which he or she contributed because of some vague transactional relationship between the driver and the passenger of the other car. From the defendant’s perspective, this relationship is a pure fortuity and has no bearing upon the defendant’s obligation to drive safely. In theory, the doctrine is justified because the passenger has joint control of the car and, thus, could have prevented the accident or is responsible for the driver’s negligence. The wisdom of this theory has been sharply questioned.[3] This theory obviously departed with the demise of contributory negligence. Hoffman v. Jones, 280 So.2d 431 (Fla.1973). We question the application of its precedent in the current context of comparative negligence and contribution among joint tortfeasors.
Third, the joint enterprise doctrine has been used to make a passenger liable, as a defendant, to third parties for the negligence of their driver. Keeton, Prosser, The Law of Torts § 72 at 517, n. 8; 6 D. Blashfield, Automobile Law and Practice § 251.9 (3d ed. 1965). This application has seldom been employed and has not been utilized in Florida.[4] This opinion should *984 not be interpreted as approving such a variety of joint enterprise.
Fourth, the joint enterprise doctrine has been used to impute the negligence of an employee/driver to a spouse if the spouse sues the employer. Raydel, Ltd. v. Medcalfe, 178 So.2d 569 (Fla.1965); Cutcher v. Walker, 455 So.2d 1335 (Fla. 1st DCA 1984), review denied, 462 So.2d 1108 (Fla.1985). In this situation, the doctrine is used to create an exception to the dangerous instrumentality doctrine. Whatever merit this application of the joint enterprise doctrine may possess, it has nothing to do with a suit by this minor against Commercial Carrier.
Finally, it is possible that the joint enterprise doctrine can be used to impute the driver’s negligence to the passenger in a ease against a third party who is entitled to raise the defense of comparative negligence concerning any negligence of the passenger and who may sue the driver for contribution. This is the variety of joint enterprise involved in this case. Neither this court nor the parties have found a case in which the supreme court has approved this theory. Since the advent of comparative negligence and contribution in the early 1970s, this court has never expressly approved this theory.[5] This court’s consideration of the joint enterprise theory has been limited to situations in which the doctrine was not applicable under the facts of the case at issue. Yusk v. Wright, 410 So.2d 982 (Fla. 2d DCA 1982); Singletary v. Nat’l R.R. Passenger Corp., 376 So.2d 1191 (Fla. 2d DCA 1979); Sisam v. Brantley, 366 So.2d 1195 (Fla. 2d DCA), cert. denied, 376 So.2d 69 (Fla.1979). While we hold that the facts of this case do not permit the application of the joint enterprise doctrine, we have no occasion to hold that the doctrine cannot exist in the context of a modern tort lawsuit. The scope of the doctrine, however, should be determined by its current function in the context of this type of case.
C. The Function of the Joint Enterprise Doctrine in a Modern Tort Case
In a tort system which permits contribution among joint tortfeasors and setoff for their settlements, the functions of joint and several liability and the joint enterprise doctrine are closely related. See §§ 768.-041, 768.31, Fla.Stat. (1989). Joint and several liability functions to place the risk of an insolvent or uncollectible tortfeasor upon a joint tortfeasor. That doctrine assumes that full compensation of the victim is a primary goal. As a result, the risk of insufficient compensation due to a tort-feasor with limited assets is borne by the joint tortfeasor rather than by the plaintiff. The plaintiff is responsible only for his or her own comparative fault.[6]
The joint enterprise doctrine allocates the same risk of uncollectibility. Unlike joint and several liability, joint enterprise places this risk upon the plaintiff. In this case, for example, Miss Kane sued Miss Ludwig. As explained in the earlier guest passenger cases, if the joint enterprise doctrine applies, Miss Kane is entitled to sue Miss Ludwig, but she, rather than Commercial *985 Carrier, must bear the risk that her friend is uncollectible.[7]
Before the adoption of comparative negligence and statutory contribution among joint tortfeasors, defendants frequently paid damage awards which seemed to exceed their true responsibility. Once the defendant paid such a judgment, it could not obtain any reimbursement from other responsible parties. It was appropriate for both the judiciary and the legislature to propose solutions for that problem.
The judicial proposal contained in the joint enterprise doctrine is a concept of very limited applicability. On the other hand, the legislature has established several improvements with broad application. In light of the several methods which the legislature has created in chapter 768 to avoid the unfair aspects of joint and several liability, we believe the judicially created joint enterprise doctrine should be conservatively employed to permit full usage of the legislative solutions. §§ 768.041, 768.-31, Fla.Stat. (1989).[8] For the joint enterprise doctrine to apply in lieu of the legislative framework, the facts of the case would need to present circumstances in which the goal of full compensation, which is promoted by joint and several liability, was overruled by policies justifying a shift of the risk of collectibility to the plaintiff. Those facts do not exist in this case.
III. THE JOINT ENTERPRISE DOCTRINE IS INAPPLICABLE TO THIS CASE
For a joint enterprise to exist in this case, the defendants would need to establish three elements with sufficient clarity to justify a shift in the risk of collectibility: 1) an agreement, express or implied, to enter into an undertaking, 2) a community of interest in the objects and purposes to be accomplished in the undertaking, and 3) equal authority to control the undertaking. See Yokom v. Rodriguez, 41 So.2d 446 (Fla.1949). The evidence in this case does not establish these elements.
First, Miss Kane is a minor. The disability of nonage has not been removed for contracts to go to social gatherings. Ch. 743, Fla.Stat. (1985). Commercial Carrier can gain no advantage from any unenforceable contract of this minor. The supreme court has at least implied that the joint enterprise doctrine does not apply to minors. Union Bus Co. v. Smith, 104 Fla. 569, 140 So. 631 (1932). Under similar facts, Texas has refused to impute negligence to a fourteen-year-old passenger. Fuller v. Flanagan, 468 S.W.2d 171 (Tex.Ct.App.1971).
Second, a simple agreement to go to a social gathering is not usually regarded as a circumstance of sufficient substance to create a “community of interest.” Keeton, Prosser, The Law of Torts § 72 at 518-19. See also Restatement (Second) of Torts § 491 comment d (1966) (common destination and common purpose without a common pecuniary interest does not constitute joint enterprise pursuant to the authority cited in the comment). Giving directions is not a factor which changes this outcome. See Bryant v. City of Tampa, 100 So.2d 665 (Fla. 2d DCA 1958).
Although it was a guest passenger case, it is difficult to distinguish the facts in this case from the allegations which were insufficient to create a joint enterprise in Yo-kom. In Yokom, the declaration disclosed a male driver who graciously, in the spirit of “chivalry,” drove a female passenger to another city. The woman offered to pay for gasoline and expenses. While the driv *986 er apparently had no business or specific goal in the other city, we are not convinced that that was dispositive. The supreme court quoted with approval the following statement from the 1936 edition of 5 American Jurisprudence Automobiles section 501 at page 787:
It is not sufficient that the passenger indicates the route or that both parties have certain plans in common, such as a “joy ride”; the community of interest must be such that the passenger is entitled to be heard in the control and management of the vehicle — such as practically to amount to joint or common possession thereof.
Yokom, 41 So.2d at 448. Likewise, it is difficult to distinguish this case from a case involving a car pool, except that a car pool has a greater business purpose and involves an extended, repetitive relationship. If a car pool is not a sufficient “community of interest” to establish a joint enterprise, neither is this trip. Conner.
Finally, a joint enterprise involves equal rights to control and manage the operation of the automobile in pursuance of the enterprise. Fla.Std.Jury Instr. (Civ.) 3.3f. When a car is lawfully driven by a licensed driver, an unlicensed minor could rarely, if ever, be regarded as having equal rights to control the car. See Sisam v. Brantley, 366 So.2d 1195 (Fla. 2d DCA), cert. denied, 376 So.2d 69 (Fla.1979). Miss Kane had a learner’s permit but could not lawfully drive this car. The driver was not shown to have had any reason to defer to the minor’s judgment concerning any aspect of the car’s operation, and the minor does not appear to have had any “right,” much less an equal right, to control the car. Because their memory of the accident was affected by its severity, the two girls provided insufficient evidence to establish a jury issue concerning joint control of the vehicle.
It may be that the facts of this case could have created an issue of joint enterprise in an earlier application of this doctrine for other purposes. Under a conservative interpretation of the doctrine as it applies to a case in which a defendant is entitled to declare the driver a joint tort-feasor and seek the remedies available under chapter 768, we see no reason to permit these facts to shift the risk of the driver’s collectibility from the joint tortfeasor to the passenger. Accordingly, Commercial Carrier is entitled only to the remedies available to it under sections 768.041 and 768.31 of the Florida Statutes (1989). On remand the trial court should enter judgment in favor of Miss Kane in the amount of the jury’s verdict, subject to a setoff for the settlement received from Miss Ludwig as a joint tortfeasor. Since the verdict totalled $160,000 and the settlement provided $100,000, the judgment should be in the amount of $60,000 with appropriate interest and costs.
Reversed and remanded.
LEHAN, A.C.J., concurs.
HALL, J., concurs in result only.

. Miss Kane and her parents had moved unsuccessfully for a directed verdict on the joint en *982 terprise theory and had objected to the jury instructions on joint enterprise.

. Repealed in 1972 by chapter 72-1, Laws of Florida.

. The following appears in The Law of Torts:
One must seriously doubt the logic and fairness of imposing vicarious responsibility, whether as plaintiff or as defendant, upon the passenger who is engaged in a "joint enterprise,” for the negligence of his driver. The contractual agreement by which he is said to enter into such an arrangement is all too obviously a fiction in situations where the parties have merely gotten together for the ride; and upon this there is erected a second fiction, that the passenger shares a “right of control” of the operation of the vehicle; and on this is erected in turn a third fiction, that the driver is his agent or servant. This top heavy structure tends to fall of its own weight. In the usual case the passenger has no physical ability to control the operation of the car, and no opportunity to interfere with it; and any attempt on his part to do so in fact would be a dangerously distracting piece of backseat driving which might very well amount to negligence in itself.
W. Keeton, W. Prosser, The Law of Torts § 72, at 522 (5th ed. 1984) (footnote omitted).

.Logically, if the driver’s negligence is imputed to this minor, it would seem that she is vicariously liable to Commercial Carrier for the damage to the front end of its truck. Florida Standard Jury Instruction (Civil) 3.3f might well suggest this outcome. If this minor were responsible for the negligence of the driver, then all teenagers who are passengers in a car with another teenager on the way to a movie, the *984 beach, or a friend’s home would risk joint and several liability for the driver’s negligence.

. Only one Florida case appears to have discussed joint venture in conjunction with comparative negligence. Florida Rock & Sand Co. v. Cox, 344 So.2d 1296 (Fla. 3d DCA 1977). The facts of that case are not detailed. It appears likely that the facts involved a business joint venture and not a nonbusiness joint enterprise. In Cox, the Third District permitted the imputed negligence to act as a reduction of the passenger’s damages. It did not involve an additional claim for contribution among tortfeasors. Thus, the result in Cox is not necessarily inconsistent with the result in this case.

. For example, in Walt Disney World Co. v. Wood, 515 So.2d 198 (Fla.1987), the plaintiff was injured when her fiance rammed her vehicle from the rear at the Disney World Grand Prix attraction. The plaintiff was 14% at fault, her fiance was 85%, and Disney World was 1%. Under joint and several liability, Disney World was obligated to pay 86% of the damages. The harshness of this result was relieved to the extent that Disney World had a right to seek contribution from the plaintiff's fiance under section 768.31, Florida Statutes (1989). Still, Disney World was left with the risk that the fiance might be uncollectible on the judgment for contribution.

. As part of the risk of collectibility, we include the risks related to an insufficient settlement from a tortfeasor prior to verdict. Under statutory contribution, a good faith settlement by a joint tortfeasor prior to verdict requires the remaining tortfeasor to pay slightly more than its pro rata share of the judgment. § 768.31(5), Fla.Stat. (1989). The joint enterprise doctrine places the risk of the insufficient settlement on the plaintiff. In this case, for example, Miss Ludwig’s pro rata share of the verdict is $104,-000 — or $4,000 more than the settlement. This $4,000 loss would be borne by Miss Kane rather than Commercial Carrier if the joint enterprise doctrine applied.

. Although inapplicable to this case, the recent statutory limitation of joint and several liability also eliminates some of the harsher effects of that doctrine. § 768.81, Fla.Stat. (1989).